# Exhibit B

JUSTIN A. BRACKETT (HI Bar No. 9954)
515 Ward Avenue
Honolulu, HI 96814
Telephone: (808) 377-6778
Email: justinbrackettlaw@gmail.com

Attorney for Plaintiff

FIRST CIRCUIT COURT
STATE OF HAWAII
FILED

2019 FEB 19 PM 3: 59

N. MIYATA
CLERK

## IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

## STATE OF HAWAI'I

| | |
|---|---|
| MIGNONETTE OLIVAS | CIVIL NO. 19-1-0105-01 GWBC |
| Plaintiff, | (Other Civil Action) |
| vs. | |
| CUTTER CJD, Inc. (d/b/a CUTTER DODGE CHRYSLER JEEP PEARL CITY), FCA US, LLC (d/b/a CHRYSLER CORPORATION and CHRYSLER GROUP LLC), and DOE DEFENDANTS 1-10, | **AMENDED COMPLAINT; EXHIBITS A – E; VERIFICATION OF COMPLAINT; SUMMONS** |
| Defendants. | |

## AMENDED COMPLAINT

Plaintiff, by and through her undersigned counsel, and pursuant to HRCP 15(a)(1) for her Amended Complaint against the Defendants, Cutter CJD, Inc., et. al. ("Defendants") who have not served a responsive pleading in this matter, files this signed Amended Complaint and brings this action against the Defendants alleging as follows:

### JURISDICTION AND VENUE

1.  The action arises out of Defendant CUTTER DODGE CHRYSLER JEEP PEARL CITY's sale to Plaintiff of an unsafe vehicle, and its failure to properly and timely replace the

## SUMMONS DENIED
LEGAL DOCUMENTS BP

1

I do hereby certify that this is a full, true, and correct copy of the original on file in this office.

Clerk, Circuit Court, First Circuit

**EXHIBIT "B"**

safety defects. FCA US, LLC (formerly known as Chrysler Corporation) is the manufacturer of the vehicle. In part, this is a complaint under Hawai'i's "Lemon Law" statute.

2.     The declaratory relief prayed for in this action is provided by the Hawaii Revised Statute ("HRS") §632-1 and Rule 57 of the Hawaii Rules of Civil Procedure ("HRCP"). The injunctive relief prayed for in this action is authorized by HRS §§ 603-21.9 and 603-23.

3.     This court has jurisdiction over this action under HRS §§ 603-21.5 and 603-21.9.

4.     The claims underlying this action arose in the State of Hawai'i. Venue is appropriate pursuant to HRS § 603-36.

PARTIES

5.     Plaintiff Mignonette Olivas (hereinafter "Plaintiff" or "Ms. Olivas") is a resident of the State of Hawai'i, and is a consumer for all purposes relevant herein.

6.     Defendant CUTTER CJD, Inc. d/b/a CUTTER DODGE JEEP CHRYSLER PEARL CITY (hereinafter "CUTTER" or "Defendant CUTTER") is the dealership and corporation that sold the subject vehicle to Plaintiff. CUTTER is organized in Hawai`i and can be served through its registered agent Marc Cutter, 677 Ala Moana BLVD, STE. 808, Honolulu, Hawaii 96813.

7.     In October 2014, Fiat Group and Chrysler Group merged to create Fiat Chrysler Automobiles. Chrysler Group, LLC was renamed to FCA US, LLC (hereinafter "FCA US" or "Defendant FCA US") on or about December 2014 to follow the naming convention of its global parent Fiat Chrysler Automobiles N.V. Defendant FCA US is a business entity incorporated in the State of Delaware and regularly conducts and transacts business in the State of Hawai'i, either by itself or through one or more subsidiaries, affiliates, business divisions, or business units. Defendant FCA US's address is FCA US, LLC, PO Box 21-8004, Auburn Hills, Michigan

48321.  Defendant FCA US can be served through its registered agent The Corporation Trust Company, Corporation Trust Center, 1136 Union Mall, Suite 301, Honolulu, Hawai'i, 96813.

8.      At all times relevant herein, Defendants were and are corporations doing business in the State of Hawai'i and are subject to the jurisdiction of this Court.  All actions taken by Defendants' employees in the course of events described herein were taken within the course of their employment with Defendants.

9.      Doe Defendants 1-10 are persons, corporations, entities or governmental units whose names, identities, capacities, activities and/or responsibilities are presently unknown to Plaintiff except that they are connected in some manner with and/or were agents, servants, employees, employers, representatives, co-venturers, associates, vendors, subcontractors or contractors, assignees and/or licensees of one or both CUTTER and Chrysler and/or were in some manner presently unknown to Plaintiff engaged in the activities alleged herein and/or participated, aided, assisted, and/or furnished the means for Defendants' wrongful conduct described herein, and/or are in some manner responsible for the damages to Plaintiff.  Plaintiff prays for leave to insert herein their true names, identities, capacities, activities, and/or responsibilities when the same are ascertained.

## SUMMARY OF THE ALLEGATIONS

10.      This is a consumer protection case involving the sale of a new vehicle.  The problem is that the vehicle has been out of service because of repair of one or more defects for thirty (30) or more cumulative business days, which violates Hawaii's Lemon Law and leaves Plaintiff without the vehicle she purchased brand new.

11.      Plaintiff took very good care of the vehicle since she bought it on or about April 2, 2018.  She has maintained its maintenance and loan payments.  Sadly, throughout the course

of her ownership the vehicle has oftentimes been and is now today inoperable and unsafe to drive.

12.     Plaintiff brought the vehicle to CUTTER for them to inspect and fix the problem. Despite Plaintiff's attempts to have Defendants fix the vehicle, it still is inoperable and unsafe.

13.     Plaintiff is afraid to drive the vehicle, especially since it places her and her family in danger.

14.     Plaintiff asserted her rights for a refund or a replacement automobile directly with the Defendants, but has thus far been denied her claims.

FACTS

15.     During all relevant times herein, Plaintiff was a consumer of her personal vehicle which she purchased from CUTTER.

16.     Defendant FCA US is the manufacturer of the vehicle.  All of the defendants are responsible for all warranties as well as the proper and timely repair of the vehicle under the warranties and Hawai'i law.

17.     On or about April 2, 2018, Plaintiff purchased a new 2018 Dodge Challenger from Defendant CUTTER for a total of $40,448.76, which includes purchase price of $35,698.76 Automotive Theft Protection of $220.00, Supreme Care (Synthetic) package of $586.00, Gap Insurance of $895.00, General Excise Tax of $1,039.33, Government License fee of $377.43, Dealer Documentary Fee of $295.00, minus a manufacturer rebate of 2,750.00, a Total Cash Down Payment of $1,950.00, and a Net Trade Equity of $50.00. A true copy of the Vehicle Sales Agreement for that transaction, given to Plaintiff by CUTTER, is attached hereto as Exhibit A. A true copy of the Lemon Law disclosure given to Plaintiff by CUTTER in connection with that transaction is attached hereto as Exhibit B.

4

18.     The mileage on the vehicle at the time of purchase on April 2, 2018 was 84 miles.

19.     Within the next 4 to 5 months, Plaintiff drove the vehicle less than 7,138 miles.

20.     Plaintiff's problems with the vehicle started early in her ownership and have continued to occur often, leaving her without her brand-new vehicle many months since she purchased it. Plaintiff began experiencing "knocking" and "clanking" when attempting to put her vehicle into gear. Anytime Plaintiff attempted to reverse or drive her vehicle it would "clank" into gear. The vehicle also knocks while being driven.

21.     On or about August 17, 2018, Plaintiff took her vehicle to CUTTER for a Recall and to get a service and repair for the knocking and clanking she experienced when trying to put her vehicle into gear. CUTTER allegedly repaired the recall issue, but initially told Plaintiff that the knock wasn't a problem and that she could simply put on the brake when shifting into/out of gear to cure it. Plaintiff finds this to be untrue. (Exhibit C). Plaintiff requested to drive other 2018 models like hers to see if they also had the same knocking and clanking issues. Upon Plaintiff's request to drive other vehicles CUTTER declined her request and instead explained the transmission was bad in the vehicle and they would then order a replacement transmission from Michigan, and it should take about a month to receive it.

22.     Plaintiff returned to CUTTER on or about August 22, 2018, when CUTTER's Service Manager explained that her vehicle was unsafe to drive and needed a whole new transmission. Plaintiff asserts that Jesse Morgan, CUTTER'S Service Manager, confirmed that the vehicle needed a new transmission after test-driving her vehicle. Plaintiff further asserts that Cutter's Service Manager again explained that the transmission would need to be shipped in from Michigan. Plaintiff was informed by CUTTER that she had been sold a "Lemon" and he was surprised Defendants had not offered her a new, replacement vehicle.

23.     On or about September 14, 2018, Plaintiff returned to CUTTER and received an invoice showing the rear axle had been replaced despite Plaintiff never having been told by CUTTER that there was a problem with the rear axle. (Exhibit C). Per CUTTER's report:  the parts and services rendered included R&I exhaust system, bolt kit, WPD, Lubricate-Gear, Different-Rear Axle, bolt-hex flange head, and Lubricate-Gear according to CUTTER'S invoice opened on or about August 17, 2018. (See Exhibit C). According to CUTTER's report, a Safety Recall, identified as "Safety Recall U60 – Reprogram Powertrain Control Module" was also performed at this time. (Exhibit C).  According to CUTTER's report, the transmission was not repaired or replaced in Plaintiff's vehicle at this time. (Exhibit C).

24.     On or about September 14, 2018, Plaintiff also noticed and addressed various scratches and damage to the vehicle that was incurred while her vehicle was in the parking lot of CUTTER's Service Department.  Plaintiff again left the vehicle with CUTTER to repair the new scratches and damage.

25.     On or about October 3, 2018, Plaintiff again returned to CUTTER to find the vehicle was still not repaired.  Upon CUTTER driving the car around for pickup Plaintiff again noticed the scratches and damage incurred while on CUTTER's service lot and again notified CUTTER of their need to repair the damage.  CUTTER opened another service invoice. (See Exhibit D). The vehicle remained in CUTTER's service department during the time the additional service invoice was opened. The Service Advisor is identified as Shanna Herrman.

26.     On or about October 5, 2018, CUTTER phoned Plaintiff and left a voicemail explaining they had a body shop guy available and will be sending it to him for repairs that day and it should be ready in about a week.

27.     On or about October 22, 2018, CUTTER opened another service invoice. (See Exhibit E). The vehicle was still in CUTTER's service department during the time the additional service invoice was opened and Plaintiff had been without her vehicle since August 17, 2018. The Service Advisor is identified as Shanna Herrmann. The Invoice explains, "Customer states lot damage occur[r]ed on RO 34157, sublet vehicle to body shop but damages still present. Please inspect damages and sublet to bodyshop for repairs." (Exhibit E).

28.     Plaintiff then returned to CUTTER on October 29, 2018.  It was cloudy and thus she did not notice the scratches as much and drove the vehicle home.  CUTTER directed her to call back if she still noticed the scratches when it was sunny.  When she drove the vehicle away she noticed it was still experiencing the same knocking and clanking issues while driving.

29.     On or about January 4, 2019, after Plaintiff made multiple attempts to address the problems her vehicle was experiencing with Defendants, and after Defendants refused to provide Plaintiff with a replacement vehicle, Plaintiff again took her vehicle to CUTTER's service department, where it currently remains. During this attempt to get her vehicle repaired or replaced, CUTTER acknowledged that there was a problem with the car and communicated this to Defendant FCA US. Plaintiff asserts that when she brought her vehicle into CUTTER, the vehicle did the knocking while she did a test drive with CUTTER's Service Manager, Jesse Morgan.  Plaintiff's husband was present during the test drive and spoke with CUTTER's General Manager and Service Manager immediately after the test drive.  The Service Manager acknowledged the knocking occurring during the test drive and the General Manager agreed it must still be fixed.

30.     Plaintiff's vehicle has been in CUTTER's service department for a period exceeding 30 days and Plaintiff has made multiple attempts to resolve the problem with both

7

CUTTER and Defendant FCA US. Defendants have been inconsistent with their diagnosis of the vehicle and refused Plaintiff's request for a replacement vehicle despite the vehicle remaining unsafe and inoperable. Plaintiff's vehicle continues to have a list of problems including the knocking and clanking when putting the vehicle into gear, electrical issues (Plaintiff's radio plays without anyone around; it powers on by itself), and Plaintiff's vehicle now has lot of damage from sitting outside CUTTER's Service Department.

31.     There are now five tags/hits on the vehicle's Carfax report, so the value of the vehicle has been substantially impaired.

### *Plaintiff's Attempts to Resolve Matter with Defendant FCA US*

32.     Plaintiff exchanged communications with FCA US's representatives in an attempt to resolve the problems with her vehicle.

33.     Plaintiff asserts that Defendant FCA US's Representative, "Ford", the "Assigned Consultation Manager," explained on November 1, 2018 that it was his job to decide if a replacement vehicle or compensation was needed. Plaintiff further asserts that FCA US's Representative explained that he spoke with CUTTER who confirmed the damage to her vehicle and FCA US's Representative explained that they would need to make it right since the damage occurred at the dealership. Plaintiff also informed FCA US's Representative that the original transmission issue was still ongoing and that CUTTER's invoices stated that another part of her vehicle was repaired instead. FCA US's Representative explained that he would give Plaintiff a call back, but failed to do so.

34.     Plaintiff attempted to follow up with FCA US on November 2, 2018, November 9, 2018, November 21, 2018, and November 30, 2018 to get a resolution to the issues with her vehicle.

35.     During a conference call with FCA US and Cutter on or about January 4, 2019, FCA US's Representative, "Ford", asserted that the problems with Plaintiff's vehicle didn't merit them replacing the car or doing a buy back at this time.

36.     FCA US's Representative required Plaintiff to take the vehicle back to CUTTER's Service Center yet again for rediagnosing of the vehicle, which Plaintiff did on or about January 4, 2019.

37.     Despite the ongoing issues and Plaintiff being unable to use the vehicle, she continues to pay for the vehicle monthly.

38.     All Defendants have refused to comply with Plaintiff's requests to repair the vehicle to its original state, and claimed many times that there was nothing wrong with the vehicle and the noise was normal, when in fact the vehicle suffers from major nonconformities that make it unsafe and significantly less valuable.

## FIRST CLAIM FOR RELIEF (Breach of Contract)

39.     Plaintiff incorporates herein the allegations set forth in paragraphs 1 through 38 above as if fully set forth herein.

40.     Defendants have breached their contract with Plaintiff as described above.

## SECOND CLAIM FOR RELIEF (HRS 480)

41.     Plaintiff incorporates the allegations as set forth in paragraphs 1 through 40 above as if fully set forth herein.

42.     Plaintiff was at all times relevant herein a consumer and the vehicle purchased by Plaintiff from CUTTER was for Plaintiff's personal use.

43.     Defendants' actions as described above constitute unfair and deceptive acts and practices in violation in violation of HRS § 480.

44.     Defendants' actions and misrepresentative, failure to honor their promises as well as the improper charges and disclosure in connection with the above-described sale and refusal to honor Plaintiff's claims were immoral, unethical, oppressive, unscrupulous, and substantially injurious to Plaintiff as a consumer, and were unfair and deceptive, in violation of HRS §§ 476, 480, and 481I.

45.     Plaintiff has suffered injury to her property in an amount to be proved at trial, but not less than three times $40,448.76 or $121,346.28, by reason of Defendants' violations.

<u>THIRD CLAIM FOR RELIEF (Injunctive Relief)</u>

46.     Plaintiff incorporates herein the allegations set forth in paragraphs 1 through 45 as if fully set forth herein.

47.     Pursuant to HRS §480-13(b)(2), Plaintiff requests injunctive relief to enjoin the unlawful practices described above.

<u>FOURTH CLAIM FOR RELIEF (Rescission)</u>

48.     Plaintiff incorporates herein the allegations set forth in paragraphs 1 through 47 as if fully set forth herein.

49.     Pursuant to HRS §480-12, Plaintiff's Credit Sale Contract for the above described vehicle is void, and is not enforceable.

50.     As a result, Plaintiff is entitled to the return of her purchase price of $40,448.76.

<u>FIFTH CLAIM FOR RELIEF (Breach of Warranties)</u>

51.     Plaintiff incorporates herein the allegations set forth in paragraphs 1 through 50 as if fully set forth herein.

52.     Each Defendant is a merchant with respect to motor vehicles.

53.     The aforementioned motor vehicle purchased by Plaintiff was subject to implied warranties of merchantability.

54.     Defendant CUTTER, to induce said sale, also made certain express warranties and representations to Plaintiff, both orally and in writing, and through their advertising and conduct.

55.     Said express and implied warranties and representations included, but were not limited to, the following:

   a.  Said vehicle was of good, sound and merchantable quality;

   b.  Said vehicle was fit for the ordinary purposes of safe and reliable transportation;

   c.  Said vehicle was free from defective parts and workmanship;

   d.  Said vehicle was so engineered and designed as to function without requiring unreasonable maintenance and repairs;

   e.  In the event said vehicle was not free from defective parts or workmanship as set forth above, that Defendants would repair or replace same without cost to Plaintiff; and

   f.  That any defects or non-conformities would be cured within a reasonable time, and that if a safety defect, that would be properly repaired the first time.

56.     Said vehicle was not as warranted and represented in that the vehicle had a serious safety defect that was not correctly repaired upon Plaintiff's multiple attempts to have Defendant CUTTER fix it.

57.     As a result of these safety defects and ongoing problems, said vehicle cannot reasonably be relied upon by Plaintiff for the ordinary purpose of safe and reliable transportation.

11

58.     Plaintiff has given Defendants reasonable opportunity to cure said defects and make the subject vehicle fit for its intended purpose, but Defendants have been unable to do so within the proper time frame and number of repairs.

59.     As a direct and proximate result of Defendants' various breaches of warranty, Plaintiff has suffered damages including but not limited to: the cost of his vehicle, the inconvenience of obtaining alternative transportation, anxiety, embarrassment, anger, fear, frustration, disappointment, worry, aggravation, and she will continue to suffer future damages together with costs and fees to obtain relief from Defendants' wrongful conduct.

### SIXTH CLAIM FOR RELIEF (Revocation of Acceptance)

60.     Plaintiff incorporates herein the allegations set forth in paragraphs 1 through 59 as if fully set forth herein.

61.     Plaintiff reasonably assumed and Defendants represented that all of the aforesaid defects and nonconformities was cured at each repair visit.

62.     The nonconformities render the vehicle worthless to Plaintiff.

63.     Plaintiff has notified Defendants of said nonconformities and of Plaintiff's intent to revoke acceptance, and demanded return of the purchase price of said vehicle or a new vehicle.

64.     Defendants have nevertheless refused to accept return of the vehicle and have refused to refund Plaintiff's purchase price or to provide her with a new vehicle.

### SEVENTH CLAIM FOR RELIEF (Breach of Obligation of Good Faith)

65.     Plaintiff incorporates herein the allegations set forth in paragraphs 1 through 64 as if fully set forth herein.

12

66.     Defendants had the duty to act in good faith with respect to the transactions as set forth herein.

67.     The actions of Defendants as described constitute a breach of the good faith requirement and as a proximate result Plaintiff has sustained the damages set forth herein.

EIGHTH CLAIM FOR RELIEF (Magnuson-Moss Warranty Act)

68.     Plaintiff incorporates herein the allegations set forth in paragraphs 1 through 67 as if fully set forth herein.

69.     This Court has jurisdiction to decide claims brought under 15 USC §2301, et seq., by virtue of 15 USC §2301(d) – (a).

70.     Plaintiff is a consumer as defined in 15 USC §2301(3).

71.     Defendants are suppliers and warrantors as defined in 15 USC §§ 2301(4) and (5).

72.     The afore described motor vehicle is a consumer product as defined in 15 USC §2301(6).

73.     15 USC §2301(a)(1) requires Defendants, warrantors, to remedy any defect, malfunction or nonconformance of the subject vehicle within a reasonable time as defined in 15 USC §2304(d).

74.     Despite the fact that Plaintiff complied with all reasonable terms and conditions imposed upon her by Defendants, Defendants did not properly and timely remedy the safety defects.

75.     As a result of Defendants' breaches of express and implied warranties as set forth in this Complaint, and their failure to remedy same competently and timely, Plaintiff has suffered the damages enumerated above.

NINTH CLAIM FOR RELIEF (Misrepresentation)

13

76.     Plaintiff incorporates herein the allegations set forth in paragraphs 1 through 75 as if fully set forth herein.

77.     At all times relevant herein, Defendants had a duty to disclose that the vehicle was unsafe and had a further duty to perform repairs or cause repairs to be performed in a careful, workmanlike manner within a reasonable time, and had a further duty to disclose to Plaintiff any defects or nonconformities which could not be cured within a reasonable time.

78.     At all times relevant herein, Defendants breached the aforesaid duty of disclosure by representing that the vehicle has been properly repaired and was safe and operable, when they knew, or in the exercise of reasonable care, should have known that to be untrue.  Defendant CUTTER on numerous occasions asserted that the knocking and clanking when Plaintiff attempted to put the vehicle into gear, which was a sign of nonconformity, was normal, which is known to be untrue.

79.     Defendants further breached the aforesaid duty to disclose by representing, either affirmatively or by omission, that the subject vehicle had been properly repaired, when in fact, the vehicle had not been adequately or properly repaired.

80.     Defendants made the aforesaid representations, knowing the same to be false or with reckless disregard as to whether they were true or false, but with the intent that Plaintiff rely on Defendants' judgments.

81.     Plaintiff justifiably and reasonably relied on Defendants' representations to her detriment, as alleged above.

82.     Defendants benefitted from Plaintiff's reliance.

83.     As a direct and proximate result of Defendants' aforedescribed misrepresentations, Plaintiff has suffered the damages set forth above.

<u>TENTH CLAIM FOR RELIEF (Lemon Law)</u>

84.    Plaintiff incorporates herein the allegations set forth in paragraphs 1 through 83 as if fully set forth herein.

85.    Plaintiff is a consumer for purposes of the Lemon Law as set forth in HRS §481I-2.

86.    Plaintiff purchased his vehicle when it was brand new.

87.    Plaintiff was without his vehicle due to nonconformities for well over thirty days in the first two years of ownership.

88.    Plaintiff's vehicle did not conform to all applicable express warranties and the nonconformities have been subject to examination or repair numerous times by Defendants, but the nonconformities continue, which is likely to cause death or serious bodily injury if the vehicle is driven.

89.    Plaintiff has made demand for the return of her purchase price or a replacement motor vehicle, but Defendants have refused.

90.    Defendants have violated other sections of the Lemon Law statute as well.

91.    As a result of Defendants' violations of the Hawai'i Lemon Law, Plaintiff is entitled to the return of her purchase price or a replacement vehicle.


WHEREFORE, Plaintiff prays for the relief as follows:

<u>AS TO THE FIRST CLAIM FOR RELIEF (Breach of Contract):</u>

A.  That judgment be awarded to Plaintiff in the amount of $40,448.76 together with additional damages to be determined.

<u>AS TO THE SECOND CLAIM FOR RELIEF (HRS §480):</u>

15

B. That Plaintiff be awarded treble damages of not less than $121,346.28.

AS TO THE THIRD CLAIM FOR RELIEF (Injunctive Relief):

C. That Defendants be ordered to cancel the sale with Plaintiff and return all amounts paid by her, or to give him a substitute vehicle that is acceptable to Plaintiff.

D. That Defendants retain the vehicle and transfer the title from Plaintiff to either or both Defendants CUTTER and Chrysler.

AS TO THE FOURTH CLAIM FOR RELIEF (Rescission):

E. That judgment be awarded to Plaintiff in the amount of $40,448.76 together with additional damages to be determined.

F. That the Court declare that the sale contract of April 2, 2018 is rescinded.

AS TO THE FIFTH CLAIM FOR RELIEF (Breach of Warranties):

G. That judgment be awarded to Plaintiff in the amount of $40,448.76 together with additional damages to be determined.

AS TO THE SIXTH CLAIM FOR RELIEF (Revocation of Acceptance):

H. That judgment be awarded to Plaintiff in the amount of $40,448.76 together with additional damages to be determined.

AS TO THE SEVENTH CLAIM FOR RELIEF (Breach of Good Faith):

I. That judgment be awarded to Plaintiff in the amount of $40,448.76 together with additional damages to be determined.

AS TO THE EIGHTH CLAIM FOR RELIEF (Magnuson-Moss Warranty Act):

J. That judgment be awarded to Plaintiff in the amount of $40,448.76 together with additional damages to be determined.

AS TO THE NINTH CLAIM FOR RELIEF (Misrepresentation):

K. That judgment be awarded to Plaintiff in the amount of $40,448.76 together with additional damages to be determined.

L. That Plaintiff be awarded exemplary damages.

AS TO THE TENTH CLAIM FOR RELIEF (Lemon Law):

M. That judgment be awarded to Plaintiff in the amount of $40,448.76 or a replacement vehicle acceptable to Plaintiff.

AS TO ALL CLAIMS FOR RELIEF:

N. That the Court award Plaintiff her reasonable attorney fees and costs.

O. That the Court award Plaintiff such other relief as the Court may deem just and proper.

DATED: Honolulu, Hawai'i, February 19, 2019.

JUSTIN A. BRACKETT, ESQ.
Attorney for Plaintiff, Mignonette Olivas



**CUTTER CHRYSLER DODGE JEEP**
**RAM OF PEARL CITY**
905 KAMEHAMEHA HIGHWAY
PEARL CITY, HAWAII 96782
Phone: (808) 564-9640  Fax: (808) 564-9660

DEAL NO.:
STOCK NO.:

# VEHICLE SALES AGREEMENT

| DATE 04/02/2018 | CUSTOMER NO.: | SALESPERSON HASAN, DARRYL | ASSIST SALES MGR. HAFF, CLAYTON | F&I MANAGER: RISE, JOEY |
|---|---|---|---|---|
| BUYER: MONONETTE N OLIVAS | | ADDRESS | | RES. PHONE: |
| CO-BUYER: | | ADDRESS | | BUS. PHONE: |
| EMPLOYER: | | OCCUPATION: | | EMPLOYER PHONE: |

| VEHICLE BEING PURCHASED: | CASH PRICE OF VEHICLE: | |
|---|---|---|
| THIS AGREEMENT COVERS MY PURCHASE FROM YOU OF THE MOTOR VEHICLE DESCRIBED BELOW. IN THIS AGREEMENT, THE WORDS I, ME AND MY MEAN THE BUYER. YOU AND YOUR REFER TO THE SELLER. | 10. BASE PRICE OF VEHICLE: | $34,190.00 |
| | 11. DEALER INSTALLED ACCESSORIES: | |

PLEASE ENTER MY ORDER FOR ONE: ☐ NEW  ☐ USED

| YEAR: 2018 | MAKE: DODGE | MODEL: CHALLENGER |
|---|---|---|
| VIN #: 2C3CDZAG0JH217289 | | LIC NO.: N/A |
| COLOR EXT.: GRAY | KEY CODE: N/A | MILEAGE: 94 |

☐ MANUFACTURER'S WARRANTY EXPIRES ON _____ OR _____ ), WHICHEVER COMES FIRST.

☐ ALL WARRANTIES HAVE EXPIRED AND VEHICLE IS SOLD AS IS AND AS SHOWN.

**USED CAR BUYER'S GUIDE** _____ (INITIAL)
I UNDERSTAND THAT THE INFORMATION I SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS AGREEMENT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISION IN THIS AGREEMENT.

| 12. ACCESSORIES TO BE INSTALLED: | |
|---|---|
| Automotive Theft Protect | $220.00 |
| GAP Protection | $895.00 |
| Supreme Care (Synthethic) | $586.00 |
| | 0.00 |
| N/A | 0.00 |
| N/A | 0.00 |
| N/A | 0.00 |
| N/A | 0.00 |

| ABOUT MY VEHICLE BEING TRADED IN, IF ANY: | (NONE INITIAL ) | 13. PRICE OF VEHICLE AND ACCESSORIES (10+11+12) | $45,891.00 |
|---|---|---|---|
| YEAR: 2015 | MAKE: NISSAN | MODEL: ROGUE | MILEAGE: 51763 | 14. OTHER | |
| TRADE STK#: P15520 | VIN: JN8AS5MT4FW155307 | LIC NO.: SPV-006 | | |
| BALANCE OWED TO (COMPANY/CONTACT) | | | | |
| BALANCE OWED: 16925.00 | DATE GOOD TILL: | CONTACT PHONE | 15. SERVICE CONTRACT | $2,840.00 |
| | | | 16. HANDLING & DESTINATION CHARGES | N/A |
| 1. TRADE-IN ALLOWANCE: | 16,975.00 | | 17. DOCUMENTATION FEE | $295.00 |
| 2. LESS BALANCE OWED ON TRADE-IN(S): | 16,925.00 | | 18. SUB TOTAL (13+14+15+16+17) | $49,032.00 |
| 3. NET TRADE EQUITY (1-2): | $50.00 | | 19. HAWAII GENERAL EXCISE TAX 4.7120 | $1,070.33 |
| 4. INITIAL DEPOSIT: DATE PAID: RECEIPT NO.: | $1,950.00 | | 20. U.S. LUXURY TAX | N/A |
| 5. ADDITIONAL DEPOSIT: DATE PAID: RECEIPT NO.: | N/A | | 21. LICENSE, LICENSE TRANSFER, SAFETY CHECK, TITLE, REGISTRATION FEE | $377.43 |
| 6. TOTAL CASH DOWN PAYMENT: (4+5) | $1,950.00 | | 22. TOTAL PRICE (18+19+20+21) | $40,448.76 |
| 7. CUSTOMER REBATE | $2,750.00 | | 23. LESS: TOTAL CREDIT (LINE 9) | $4,750.00 |
| 8. OTHER: (DESCRIBE) | N/A | | 24. UNPAID CASH BALANCE (22-23) | $35,698.76 |
| 9. TOTAL CREDIT (3+6+7+8) | $4,750.00 | | | |

FOR MY PROTECTION, YOU REQUEST THAT MY CHECKS MUST BE MADE PAYABLE TO **CUTTER CHRYSLER DODGE JEEP RAM OF PEARL CITY**. YOU WILL NOT BE LIABLE FOR ANY OF MY CHECKS NOT MADE PAYABLE TO **CUTTER CHRYSLER DODGE JEEP RAM OF PEARL CITY**. IF MY PAYMENT IS MADE IN CASH, I WILL BE SURE TO ASK FOR AND RECEIVE A **CUTTER CHRYSLER DODGE JEEP RAM OF PEARL CITY** OFFICIAL RECEIPT.

1. I UNDERSTAND THAT THE REVERSE SIDE IS PART OF THIS AGREEMENT. I HAVE READ BOTH SIDES BEFORE I SIGNED.
2. I ACKNOWLEDGE THAT BEFORE I SIGNED, ALL BLANK SPACES WERE FILLED IN AND I RECEIVED A COMPLETELY FILLED IN COPY OF THIS AGREEMENT.
3. I UNDERSTAND THAT THIS ORDER IS NOT BINDING UNLESS IT IS SIGNED BY YOUR AUTHORIZED REPRESENTATIVE.
4. I UNDERSTAND THAT UNLESS I HAVE PAID YOU IN FULL OR I HAVE TAKEN POSSESSION OF THE VEHICLE OR I AM PURCHASING A VEHICLE THAT IS NOT IN INVENTORY, THIS AGREEMENT WILL AUTOMATICALLY TERMINATE ON _____ (THIRTY (30) DAYS FOLLOWING DATE OF VEHICLE SALES AGREEMENT)

| AGREED AND ACCEPTED: | | LIENHOLDER |
|---|---|---|
| BUYER: _____ | DATE 04/02/2018 | Address BANK OF HAWAII-AFD PO BOX 4173 HONOLULU HI 96812 |
| CO-BUYER: | DATE | Internal Use Only: |
| APPROVED AND ACCEPTED: CUTTER CHRYSLER DODGE JEEP RAM OF PEARL CITY | | Balance Paid |
| | | Temporary Lic. No.        Delivery Date |
| BY: _____ | DATE 04/02/2018 | |

☐ (check if applicable - used vehicles only)  **"AS IS"**
**THIS VEHICLE SOLD "AS IS". YOU WILL HAVE TO PAY FOR ANY REPAIRS NEEDED AFTER SALE. IF WE HAVE MADE ANY PROMISES TO YOU, THE LAW SAYS WE MUST KEEP OUR PROMISES, EVEN IF WE SELL "AS IS". TO PROTECT YOURSELF, ASK US TO PUT ALL PROMISES IN WRITING.**

EXHIBIT A

## THESE ARE ADDITIONAL TERMS
## AND CONDITIONS TO MY SALES AGREEMENT

### Title to Vehicle

Title to the vehicle will not pass to me until you have received full payment. If I do not pay by cash or certified check, you may keep the title until my checks have cleared. If my bank or financial institution refuses to honor my check, you can immediately repossess the vehicle without giving me prior notice of your intent to repossess. I agree to pay you for any costs or damages due to my use of the vehicle and your efforts to repossess the vehicle.

### Credit Approval

If I apply for credit in purchasing the vehicle, this Agreement will not be binding on you until my credit is approved even if you sign the front side of this Agreement. If my credit is not approved and I already have possession of the vehicle, I agree to return it to you within 24 hours after you notify me that my credit has not been approved. I promise to pay you the cost of repairing any damage to the vehicle while in my possession, except for ordinary wear from normal use. You agree to return to me any vehicle which I traded in with this Agreement. If you have already sold the trade-in vehicle, you will refund to me the selling price less your actual cost of sale which includes among other items, commissions paid and overhead expenses that you have incurred or the Dealer's Appraised Actual Cash Value at time of delivery, whichever is greater. If you arrange credit for me, the financial institution's Credit Sale Contract will contain complete loan disclosure information as required by law.

### Vehicle Delivery Check Sheet

At the time of delivery of the vehicle to me a Vehicle Delivery Check Sheet will be completed and signed, that Vehicle Delivery Check Sheet by this reference is incorporated in and made a part of this Agreement.

### Trade-in of Used Vehicle with Contract

If a used vehicle is traded in as part of my payment for the vehicle purchased, the following will apply to the trade-in:

1. I agree to provide you with a valid proof of title to the trade-in vehicle.
2. I guarantee that the trade-in vehicle is free and clear of all liens and claims except those that I have stated on the face of this Agreement. If I owe more for the trade-in vehicle than is shown on the face of this Agreement, I agree to pay the additional amount to you upon demand after delivery of the vehicle purchased.
3. I guarantee that the trade-in vehicle is not a rebuilt or salvage vehicle. The Certificates of Registration and Ownership issued by the Department of Motor Vehicles do not contain the words Rebuilt Vehicle or Salvage Vehicle.
4. If the trade-in vehicle is a rebuilt or salvage vehicle, I promise to repurchase the vehicle at its appraised actual cash value of the vehicle and to pay for any damages or loss to you if any of my statements about the trade-in vehicle are false.
5. I agree that if I do not deliver the trade-in vehicle to you until the vehicle purchased is delivered to me, the trade-in vehicle will be reappraised at the time that it is actually delivered to you. The reappraised value will determine the trade-in allowance (on the face of this Agreement) and the balance I must pay may be higher. If the reappraised value is lower and I am dissatisfied, I may cancel this Agreement. However, I may not cancel this Agreement if I have taken delivery of the purchased vehicle.

### Failure to Complete Purchase

I agree that I may cancel this Agreement only if I refuse to accept the reappraised value of a trade-in vehicle. Otherwise, if I do not accept delivery of the vehicle I purchased, you may keep my cash deposit as payment for your costs. If you already have possession of my trade-in vehicle, you may sell it and pay me the balance after deducting your costs of storing, insuring, conditioning, advertising and selling the vehicle. If you decide not to sell the vehicle, you will return it to me after I pay you a reasonable charge for storage and any other costs to you. I understand the value of my trade-in vehicle is the appraised actual cash value of the vehicle, not the allowance for my trade-in vehicle stated in this Agreement.

### Attorney's Fee

I promise to pay you any court costs and reasonable attorney's fees that you pay if you take legal action against me to enforce the terms of this Agreement.

### Payment of Tax

The price of the vehicle shown on the front of this Agreement does not include any sales or use taxes unless those taxes are stated in this Agreement. If there are any other taxes due under this Agreement, I promise to pay them.

### Transfer of Rights and Obligations

I agree that I cannot transfer my rights or obligations under this Agreement to someone else without your written consent.

### Delay or Failure in Delivery of Vehicle

I agree that you are not liable to me for any failure to deliver or for any delay in delivering the vehicle purchased if the failure or delay is beyond your control. If I am purchasing a new motor vehicle, I agree that if any accessory which is listed on the front of this Agreement as a Factory Installed Accessory or Dealer Installed Accessory is not available within a reasonable time after delivery of the vehicle to me, you will adjust the price I pay for the vehicle by the price of that accessory.

### Liability for Losses

You are not responsible to me for any losses which I may suffer under this Agreement. You will not pay me for any loss of use of the vehicle, loss of profit or income, or any other losses due to delay or failure to deliver the vehicle, my cancellation of this Agreement, or any other reason.

### Statements by Salespersons

Any oral statements made by your salespersons about the vehicle sold under this Agreement are not promises to you, should not be relied upon by me, and are not part of this Agreement. This written Agreement contains all our understandings regarding the vehicle purchased by me and we have no understandings other than the ones in this Agreement.

### Warranties on New Vehicles

A new motor vehicle sold under this Agreement is covered by the Manufacturer's warranties contained in the Manufacturer's New Car Warranty which will accompany delivery of the vehicle. You as the seller make NO EXPRESS OR IMPLIED WARRANTIES, including NO WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE covering the vehicle unless, (1) I buy the vehicle to be used solely for personal, family or household purposes and (2) you make a written warranty to me, or you enter into a service contract with me at the time of this sale of the vehicle. I understand that you may limit the period of any implied warranty which applies to the vehicle if the limitation is reasonable and if the limitation appears in clear language on the written warranty.

### Warranties on Used Vehicles

All used vehicles sold by you are sold "AS IS". You do not guarantee the year, model, condition or mileage of any used vehicle. There are NO WARRANTIES, EXPRESS OR IMPLIED, including NO WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE on any used vehicle you sell to me unless the vehicle is covered by the Manufacturer's Warranty or unless you and I agree otherwise in writing. I agree that I have checked the description of any used vehicle myself and I am satisfied the description is correct.

### Documentation Fees

Documentation Fees cover documentation and personnel costs in connection with preparing and processing paperwork to deliver and register the vehicle into my name.

### Handling and Destination Charges

Handling and Destination charges represent cost and expenses incurred other than stated elsewhere in this agreement. These costs and expenses may include among other items, penalties paid to state, city, or local government. Destination charges represent cost and expenses incurred to bring the vehicle to the dealership and make the vehicle ready for sale.

### NOTICE TO BUYER

NOTICE IS HEREBY GIVEN THAT HAWAII LAW STATES THAT NO PERSON SHALL OPERATE A MOTOR VEHICLE UPON ANY PUBLIC STREET, ROAD OR HIGHWAY IN THIS STATE AT ANY TIME UNLESS SUCH MOTOR VEHICLE IS INSURED AT ALL TIMES UNDER A NO FAULT INSURANCE POLICY.

FL602193 O

| PIP MEMBER # | ETCH NO | | CUSTOMER REGISTRATION NO. |
|---|---|---|---|
| | | | 2576 |

| | | Limited Three Year Warranty | Month 04 | Day 02 | Year 2018 |
|---|---|---|---|---|---|

| DEALER'S NAME | CUTTER CJD, INC | | | Dealer Code | |
|---|---|---|---|---|---|
| DEALER'S ADDRESS | 905 KAMEHAMEHA HWY | | PEARL CITY, HI | | 96782 |

| CUSTOMER'S NAME | Last Name OLIVAS | First Name MIGNONETTE | | | Initial N |
|---|---|---|---|---|---|
| CUSTOMER'S ADDRESS | Street Address | City WAHIAWA | | State HI | Zip Code 96786 |
| CUSTOMER'S PHONE | Area Code Day Phone | | Area Code | Night Phone | |
| VEHICLE INFORMATION | Make DODGE | Year 2018 | Model CHALLENGER | Serial Number 2C3CDZAG0JH217289 | Mileage 84 |
| CUSTOMER'S E-MAIL | | | PRODUCT COST | 220.00 | |

The Dealer who provides You with this Customer Registration Form ("Registration") will complete this form. The Dealer will then return the original of this Registration to Cal-Tex Protective Coatings, Incorporated ("CalTex"), at the address shown below. CalTex reserves the right to reject this Registration if the proper fees are not submitted to CalTex by the Dealer within sixty (60) days of the date of the application of the product to Your Vehicle. Please call CalTex at the toll-free number listed below if You have any questions regarding the registration of Your Limited Warranty. **THE PURCHASE OF THIS PRODUCT IS NOT REQUIRED AS A CONDITION TO OBTAIN FINANCING ON YOUR VEHICLE.**

## BASIC THREE YEAR LIMITED WARRANTY
## WINDOW ETCH PRODUCT
## ($2,500.00  lump sum)

I have read this Registration and the Limited Warranty and I understand and agree to all the terms and conditions.

04/02/2018

CUSTOMER'S SIGNATURE                                    DATE 04/02/2018

AUTHORIZED DEALER SIGNATURE                             DATE

CAL-TEX PROTECTIVE COATINGS, INC. • 7455 NATURAL BRIDGE CAVERNS RD • SCHERTZ, TX 78154-3210 • (800) 707-9292 • www.ctpc.com
WHITE - CALTEX • YELLOW - DEALER • PINK - CUSTOMER
©1994 - 2017  CAL-TEX PROTECTIVE COATINGS, INC.

170501.AHIC

## AUTOMOTIVE THEFT PROTECTION™ LIMITED WARRANTY



I.   **SCOPE OF THIS LIMITED WARRANTY:**
Cal-Tex Protective Coatings, Incorporated ("CalTex") warrants that when the Automotive Theft Protection™ product ("ATP®") is properly and professionally applied to or installed on Your Vehicle, should ATP® fail to deter the theft of Your Vehicle, and if all the provisions of this Limited Warranty ("Warranty") are satisfied, CalTex will:
   A)  Pay to You a Rental Car Reimbursement up to $250; and
   B)  Pay on Your behalf Two Thousand Five Hundred dollars ($2,500) toward Your purchase or lease of a Replacement Vehicle.

II.  **EXCEPTIONS TO THIS WARRANTY: THIS WARRANTY DOES NOT APPLY TO THEFT UNDER THE FOLLOWING CONDITIONS:**
   A)  Losses caused by civil disturbance, riots, war, acts of war, acts of God, government seizure or destruction, or a loss not otherwise attributable to theft.
   B)  If Your Vehicle is recovered within **thirty (30) days** of the date of theft, and is not ruled a constructive total loss (i.e. "totaled") by Your insurer.
   C)  When Your insurer providing comprehensive insurance for Your Vehicle has not yet paid, or refuses to pay, any monies for the theft of Your Vehicle.
   D)  If You have not submitted to CalTex prior to **forty-five (45) days** from the date of theft, the information referred to in Section V. Claims Procedure.
   E)  Illegal acts, misrepresentation and/or fraud by You, whether acting alone or in collusion with others.
   F)  If Your Vehicle was left unlocked or if the keys were left in Your Vehicle.
   G)  Theft occurs outside the United States of America and Canada.
   H)  Theft by Your family members or any other persons who have access to the keys of Your Vehicle.

III. **LIMITATIONS ON CALTEX LIABILITY:** CALTEX'S MAXIMUM LIABILITY UNDER THE ATP® PRODUCT IS EXPRESSLY LIMITED TO THE PAYMENT OF THE WARRANTY CLAIM CALCULATED PURSUANT TO THE TERMS OF THIS WARRANTY (UP TO) THE DOLLAR AMOUNT INDICATED ON THE REGISTRATION. CALTEX SHALL NOT BE LIABLE FOR INCIDENTAL, PUNITIVE OR CONSEQUENTIAL DAMAGES. THIS WARRANTY GIVES YOU SPECIFIC LEGAL RIGHTS. YOU MAY ALSO HAVE OTHER RIGHTS THAT VARY FROM STATE TO STATE. SOME STATES DO NOT ALLOW THE EXCLUSION OR LIMITATION OF INCIDENTAL OR CONSEQUENTIAL DAMAGES, OR DO NOT ALLOW LIMITATIONS ON HOW LONG AN IMPLIED WARRANTY LASTS, SO THE ABOVE LIMITATIONS OR EXCLUSIONS MAY NOT APPLY TO YOU.

IV.  **REQUIREMENTS FOR THIS WARRANTY TO BECOME EFFECTIVE:**
   A)  CalTex's receipt from the Dealer of the Registration and correct Registration fees within **sixty (60) days** of the date of the application of the product to Your Vehicle.
   B)  You obtain and maintain comprehensive insurance coverage on Your Vehicle for the "Actual Cash Value" of Your Vehicle throughout the Term.

V.   **CLAIMS PROCEDURE:** Within **forty-five (45) days** of theft, You provide to CalTex, by Certified Mail, Return Receipt Requested:
   1)  A copy of Your Registration and Warranty or other method of purchase of the ATP® product;
   2)  A copy of the police report that was filed within **ten (10) days** of the date of theft;
   3)  A copy of the settlement check from Your comprehensive insurance company for the theft of Your Vehicle;
   4)  A copy of the Vehicle purchase or lease agreement;
   5)  A copy of the Replacement Vehicle purchase or lease agreement, if any; and
   6)  A copy of Your rental car agreement, if any.
   Contact CalTex at 1-800-707-9292 or www.ctpc.com with any questions regarding your claim. **For a Warranty claim to be considered, the claim must be filed during the Term indicated on the Registration associated with this Warranty.**

VI.  **PAYMENT ON WARRANTY CLAIM:** CalTex payment for an approved warranty claim shall be made within **forty-five (45) days** after You have satisfactorily met the requirements listed in Section V. Claims Procedure. Any CalTex payment under this Warranty will satisfy all obligations owed by CalTex to You, release CalTex from any liability under this Warranty, and cause this Warranty to expire.

VII. **DISPUTE RESOLUTION CLAUSE:** Any controversy or claim arising out of or relating to this warranty, or the breach thereof, shall be settled by arbitration administered by the American Arbitration Association in accordance with its arbitration rules and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. The arbitrator(s) shall award to the prevailing party, if any, as determined by the arbitrators, all of their costs and fees. "Costs and fees" mean all reasonable pre-award expenses of the arbitration, including the arbitrators' fees, administrative fees, travel expenses, out-of-pocket expenses such as copying and telephone, court costs, witness fees, and attorneys' fees. The award of the arbitrators shall be accompanied by a reasoned opinion. Both CalTex and You agree that this dispute resolution clause shall be a complete defense in any suit, action, class action, class arbitration, or proceeding instituted in any federal, state or local court with respect to any controversy or dispute arising out of this Warranty.

VIII. **DEFINITIONS:**
**You and Your** shall refer to the CalTex customer who signs and is listed on the Registration associated with this Warranty.
**Vehicle** shall refer to the automobile, truck, or van listed on the Registration associated with this Warranty. No substitutions for the Vehicle will be allowed.
**Replacement Vehicle** shall refer to the vehicle You purchase or lease under the terms of this Warranty as a replacement for Your Vehicle.
**Rental Car Reimbursement** shall refer to rental car expense that You must directly pay out-of-pocket, in excess of any amounts paid to You or on Your behalf under Your comprehensive insurance coverage, to a rental car company following the theft of Your Vehicle. Rental Car Reimbursement will not be paid to You unless Your warranty claim results in a payment by CalTex for an approved warranty claim.
**Dealer** shall refer to the provider of ATP® listed on the Registration and shall be a nationally franchised seller of automobiles, trucks and vans.
**Term** shall refer to the period of time that this Warranty shall be in effect from the date of Your signing the Registration until the earlier of the expiration of the Term as indicated on the Registration or until CalTex has made a warranty claim payment under this Warranty.

IX.  **OTHER PROVISIONS:**
**CANCELLATION OF WARRANTY:** This Warranty is non-cancellable by you.
**MISREPRESENTATION AND FRAUD:** This Warranty shall be void if You have concealed or misrepresented any material fact or circumstance relating to this Warranty or the subject thereof, whether before or after a loss. This includes, but is not limited to, any dishonest, fraudulent, or criminal act by You or anyone acting in any capacity as Your agent, whether direct or indirect, which causes or contributes to the theft of Your Vehicle.
**TRANSFER OPTION:** This Warranty is transferable, during its Term, to a second owner of Your Vehicle subject to CalTex approval, providing the second owner notifies CalTex of the request of transfer within **thirty (30) days** of the date of sale. Contact CalTex for fees and transfer procedures.
**REIMBURSEMENT INSURANCE POLICY:** CalTex obligations under this Warranty are insured under a reimbursement insurance policy. If a payment for an approved warranty claim is not provided by CalTex before the 61st day after You have satisfactorily met the requirements listed in Section V. Claims Procedure, You may apply for reimbursement directly to the CalTex reimbursement insurance company: Virginia Surety Company, Inc., 175 West Jackson Blvd., Chicago, Illinois 60604, 1-800-209-6206.
**COMPUTATION OF TIME:** All time periods stated in this Warranty shall be computed by beginning the count on the day of the specified event.
**NOTICE TO CONSUMER: This Warranty is a product warranty and is not insurance.** This Warranty is regulated by the Hawaii Department of Commerce & Consumer Affairs, Division of Insurance ("DCCA/DOI"). Any unresolved questions or complaints regarding the regulation of CalTex may be addressed to the DCCA/DOI at: Hawaii Department of Commerce & Consumer Affairs, Division of Insurance, P.O. Box 3614, Honolulu, HI 96811, telephone 1-808-586-2790.
**ENTIRE AGREEMENT:** THIS WARRANTY REPRESENTS THE ENTIRE AGREEMENT BETWEEN CALTEX AND YOU, AND CANNOT BE MODIFIED OR ENLARGED IN ANY WAY EXCEPT IN WRITING BY CALTEX. THE ONLY INDIVIDUALS AUTHORIZED TO BIND AND SPEAK FOR CALTEX ARE THOSE LOCATED AT THE ADDRESS BELOW. THIS WARRANTY IS A PRODUCT WARRANTY THAT PROVIDES FOR THE PRODUCT INSTALLED OR APPLIED TO YOUR VEHICLE. THE ATP® DEALER IS NOT AUTHORIZED TO EXTEND OR IN ANY MANNER MODIFY THE TERMS AND CONDITIONS OF THIS WARRANTY, OR RECEIVE DOCUMENTS, CORRESPONDENCE OR NOTICES, ON BEHALF OF CALTEX.

# NOTICE OF CONSUMER RIGHTS
# UNDER HAWAII'S LEMON LAW
## FOR NEW MOTOR VEHICLES

If a vehicle has a defect that substantially impairs the use, safety, or value of the vehicle and a reasonable opportunity to repair has been provided within the Lemon Law Rights Period, the manufacturer may be required to provide a refund or replacement vehicle to the consumer under the Lemon Law. To make this determination, a consumer may be eligible for the State Certified Arbitration Program (SCAP) administered by the Department of Commerce and Consumer Affairs. The Lemon Law Rights Period means the term of the manufacturer's express warranty; the period ending two years after the date of the original delivery of a vehicle to a consumer, or the first 24,000 miles of operation WHICHEVER OCCURS FIRST. At least one of the following must apply:*

1. a "nonconforming defect" has been examined or repaired three or more times and the defect continues to exist; or

2. a "life-threatening safety defect" has been examined or repaired at least once and the defect continues to exist; or

3. the vehicle has been out-of-service because of repair of one or more defects for (3) or more cumulative business days.

The manufacturer or its authorized dealer should provide this notice at time of purchase. If you received this notice, you must give the *manufacturer written notice* of the defect before the Lemon Law Rights Period expires.

The manufacturer's address is as follows:

**CHRYSLER GROUP LLC**
**CUSTOMER RELATIONS MANAGER**
**7700 IRVINE CENTER DRIVE #315**
**IRVINE, CA 92618-2924**

Whenever a vehicle is returned from diagnosis or repair under the manufacturer's warranty, the dealer must provide a legible itemized repair order. It is very important to keep copies of all repair orders.

Obtain more information to determine if you qualify to participate in the State Certified Arbitration Program (SCAP) by contacting:

**Regulated Industries Complaints Office**
**235 S. Beretania Street, 9th Floor**
**Honolulu, HI 96813**
**(808) 587-3222**

www.hawaii.gov/dcca/rico

If you qualify, your case must be initiated within one year after the expiration of the Lemon Law Rights Period. There is a $50.00 filing fee to process your case, which will be returned to you if you win after an arbitration hearing. The arbitration decision will be issued within forty-five (45) days after your case is initiated by the program.

\*     \*     \*     \*     \*

I understand that it is the dealer's direct responsibility to provide me with this notice of my rights at the time that I purchase or lease my new motor vehicle.

I have been provided with a copy of this document including the address of the manufacturer's contact.

Signature: 

Date: 04/02/2018

| HAWAII STATE Department of Commerce and Consumer Affairs | This info is provided by: | CUTTER CHRYSLER JEEP DODGE OF PEARL CITY 905 Kamehameha Highway Pearl City, HI 96782 | & | CUTTER CHRYSLER JEEP DODGE OF HONOLULU CUTTER FIAT HAWAII 777 Ala Moana Blvd. Honolulu, HI 96813 |

Dealer: Give a copy of the signed document to the consumer and keep a copy of the signed document on file for 2 years to be made available to the DCCA upon request.

06/13

EXHIBIT B

**Cutter**

Cutter Chrysler Jeep Dodge of Pearl City
License No. RD-4118
905 Kamehameha Highway
Pearl City, Hawaii 96782-2501
Ph: (808) 564-9316   Fax: (808) 564-9317
Visit us online at: www.cuttercars.com

CUSTOMER #: ████6598

34151

INVOICE

MIGNONETTE N OLIVAS
█████████
WAHIAWA, HI 967863690
HOME: ████████    CONT: ███████
BUS:        CELL: ███████████

PAGE 1

SERVICE ADVISOR: 9444 SHANNA HERRMANN

| COLOR | YEAR | MAKE/MODEL | VIN | LICENSE | MILEAGE IN/OUT | TAG |
|-------|------|-----------|-----|---------|----------------|-----|
| GRAY | 18 | DODGE CHALLENGER | 2C3CDZAG0JH217289 | TNS861 | 7222/7224 | T7720 |

| DEL DATE | PROD. DATE | WARR. EXP. | PROMISED | PO NO. | RATE | PAYMENT | INV. DATE |
|----------|-----------|-----------|----------|--------|------|---------|-----------|
| 02APR18 DD | | 05FEB2021 | 14:00 28AUG18 | | 140.00 | CASH | 14SEP18 |

| R.O. OPENED | READY | OPTIONS: | SOLD-STK:WD18113 ENG:3.6_Liter |
|-------------|-------|----------|--------------------------------|
| 07:32 17AUG18 | 13:48 14SEP18 | | |

| LINE | OPCODE | TECH | TYPE | HOURS | LIST | NET | TOTAL |
|------|--------|------|------|-------|------|-----|-------|

A Recall / CSN 1 [U60: Safety Recall U60 - Reprogram Powertrain Control
    Module**]
CAUSE: RECALL
    18U60183 Safety Recall U60 - Reprogram Powertrain
        Control Module - Reprogram Inspect PCM
        Software Level and Perform Software Update
        (2018 Model Year Only)
        1202   WPD
    FC: PART#: COUNT:                                                    (N/C)
    CLAIM TYPE:   W
    AUTH CODE:

7222 PERFORM U60 RECALL FLASH PCM AND CK OPERATION CK OK. OLD PN
68353058AC NEW ONE AD .2HR 18U60182. RECALL COMPLETE.
*********************************************************************

B CUSTOMER STATES RADIO INTERMITTENTLY DOES NOT TURN OFF AFTER VEHICLE
    IS OFF. PLEASE CHECK AND REPORT
CAUSE: OEPRATING AS DESIGH
    85418701 Audio, Video and Telematics
        Components, Trouble Not Found - No
        Repair/Trouble Not Found Radio (2 - Skilled)
        1202   WPD
    FC: PART#: COUNT:                                                    (N/C)
    CLAIM TYPE:   W
    AUTH CODE:

7222 CHECK TO VERIFY CONCERN. CHECK RADIO OPERATION SEVERAL TIMES
AND TURN IGNITION OFF AND RADIO IS STILL ON UNTIL DOOR IS OPEN THEN IT
WILL SHUT OFF WHICH IS NORMAL FEATURE FOR THIS VEHICLE BUT MANUALLY
TURN RADIO OFF AND IT GOES OFF ALL THE TIME. CHECK FOR TSB AND STAR

**PAID**

ON BEHALF OF SERVICING DEALER, I HEREBY CERTIFY THAT THE INFORMATION CONTAINED HEREON IS ACCURATE UNLESS OTHERWISE SHOWN. SERVICES DESCRIBED WERE PERFORMED AT NO CHARGE TO OWNER. THERE WAS NO INDICATION FROM THE APPEARANCE OF THE VEHICLE OR OTHERWISE, THAT ANY PART REPAIRED OR REPLACED UNDER THIS CLAIM HAD BEEN CONNECTED IN ANY WAY WITH ANY ACCIDENT, NEGLIGENCE OR MISUSE. RECORDS SUPPORTING THIS CLAIM ARE AVAILABLE FOR (1) YEAR FROM THE DATE OF PAYMENT NOTIFICATION AT THE SERVICING DEALER FOR INSPECTION BY MANUFACTURER'S REPRESENTATIVE.

STATEMENT OF DISCLAIMER
The factory warranty constitutes all of the warranties with respect to the sale of this item/items. The Seller hereby expressly disclaims all warranties either express or implied, including any implied warranty of merchantability or fitness for a particular purpose. Seller neither assumes nor authorizes any other person to assume for it any liability in connection with the sale of this item/items.

| DESCRIPTION | TOTALS |
|-------------|--------|
| LABOR AMOUNT | |
| PARTS AMOUNT | |
| GAS, OIL, LUBE | |
| SUBLET AMOUNT | |
| MISC. CHARGES | |
| TOTAL CHARGES | |
| LESS INSURANCE | |
| SALES TAX | |
| PLEASE PAY THIS AMOUNT | |

(SIGNED)   DEALER, GENERAL MANAGER OR AUTHORIZED PERSON   (DATE)

CUSTOMER SIGNATURE

EXHIBIT C

CUSTOMER COPY SERVICE

Copyright 2014 CDK Global, LLC  SERVICE INVOICE TYPE J - SOC - IMAGING

**Cutter**

**Cutter Chrysler Jeep Dodge of Pearl City**
License No. RD-4118
905 Kamehameha Highway
Pearl City, Hawaii 96782-2501
Ph: (808) 564-9316   Fax: (808) 564-9317
Visit us online at: www.cuttercars.com

CUSTOMER #: ███6598                    34151

                                        INVOICE

MIGNONETTE N OLIVAS

WAHIAWA, HI 967863690                   PAGE 2
HOME: ████████████████████
BUS:         CELL: ███████████    SERVICE ADVISOR: 9444 SHANNA HERRMANN

| COLOR | YEAR | MAKE/MODEL | VIN | LICENSE | MILEAGE IN/OUT | TAG |
|-------|------|------------|-----|---------|----------------|-----|
| GRAY | 18 | DODGE CHALLENGER | 2C3CDZAG0JH217289 | TNS861 | 7222/7224 | T7720 |

| DEL DATE | PROD. DATE | WARR. EXP. | PROMISED | PO NO. | RATE | PAYMENT | INV. DATE |
|----------|------------|------------|----------|--------|------|---------|-----------|
| 02APR18 DD | | 05FEB2021 | 14:00 28AUG18 | | 140.00 | CASH | 14SEP18 |

| R.O. OPENED | READY | OPTIONS: | SOLD-STK:WD18113  ENG:3.6 Liter |
|-------------|-------|----------|----------|
| 07:32 17AUG18 | 13:48 14SEP18 | | |

| LINE | OPCODE | TECH | TYPE | HOURS | | LIST | NET | TOTAL |
|------|--------|------|------|-------|---|------|-----|-------|

CASE NONE. CHECK FOUND RADIO VERSION IS UP TO DATE. UNABLE TO DUPLICATE
STATED CONDITION AT THIS TIME.

C  I REMOVED ALL VALUABLES (MONEY, GLASSES, DVD, CD JEWELRY,
       ETC)
    VP I REMOVED ALL VALUABLES (MONEY, GLASSES, DVD,
        CD JEWELRY,
        ETC)
        1234    CD                                          0.00        0.00

D** ENTERPRISE RENTAL
CAUSE: *RENTAL
    RENTAL: RENTAL UNIT _____
        1234   WPD
    FC: PART#: COUNT:                                                   (N/C)
    CLAIM TYPE:    W
    AUTH CODE:

SUBL ENTERPRISE RAC INV# D339144-3605/ PO#: 110970
        WPD                                                             (N/C)

*****************************************************

E** ADD ON OPERATION-CUSTOMER STATES WHEN PUTTING VEHICLE INTO PARK OR
    INTO DRIVE, THERE IS A CLUNK NOISE FROM FRONT OF VEHICLE. EVEN
    ON FLAT GROUNDS. PLEASE CHECK AND REPORT.
CAUSE: *EXCESSIVE PLAY
    03300115 Axle / Differential, assembly, Rear -
        Replace 195 mm (2 - Skilled)
        1337   WPD                                                      (N/C)
    FC: UC PART#: COUNT:
    CLAIM TYPE:    W
    AUTH CODE:

ON BEHALF OF SERVICING DEALER, I HEREBY CERTIFY THAT THE INFORMATION CONTAINED HEREON IS ACCURATE UNLESS OTHERWISE SHOWN. SERVICES DESCRIBED WERE PERFORMED AT NO CHARGE TO OWNER. THERE WAS NO INDICATION FROM THE APPEARANCE OF THE VEHICLE OR OTHERWISE, THAT ANY PART REPAIRED OR REPLACED UNDER THIS CLAIM HAD BEEN CONNECTED IN ANY WAY WITH ANY ACCIDENT, NEGLIGENCE OR MISUSE. RECORDS SUPPORTING THIS CLAIM ARE AVAILABLE FOR (1) YEAR FROM THE DATE OF PAYMENT NOTIFICATION AT THE SERVICING DEALER FOR INSPECTION BY MANUFACTURER'S REPRESENTATIVE.

STATEMENT OF DISCLAIMER
The factory warranty constitutes all of the warranties with respect to the sale of this item/items. The Seller hereby expressly disclaims all warranties either express or implied, including any implied warranty of merchantability or fitness for a particular purpose. Seller neither assumes nor authorizes any other person to assume for it any liability in connection with the sale of this item/items.

| DESCRIPTION | TOTALS |
|-------------|--------|
| LABOR AMOUNT | |
| PARTS AMOUNT | |
| GAS, OIL, LUBE | |
| SUBLET AMOUNT | |
| MISC. CHARGES | |
| TOTAL CHARGES | |
| LESS INSURANCE | |
| SALES TAX | |
| PLEASE PAY THIS AMOUNT | |

(SIGNED)    DEALER, GENERAL MANAGER OR AUTHORIZED PERSON    (DATE)

CUSTOMER SIGNATURE

Copyright 2014 CDK Global, LLC   SERVICE INVOICE TYPE 2 - 8/2C : IMAGING

CUSTOMER COPY SERVICE

CUSTOMER #: ████6598

**Cutter**

34151

INVOICE

Cutter Chrysler Jeep Dodge of Pearl City
License No. RD-4118

MIGNONETTE N OLIVAS

905 Kamehameha Highway
Pearl City, Hawaii 96782-2501

WAHIAWA, HI 967863690

PAGE 3

Ph: (808) 564-9316   Fax: (808) 564-9317

HOME: ████     CONT: ████████

Visit us online at: www.cuttercars.com

BUS:          CELL: ████     SERVICE ADVISOR: 9444 SHANNA HERRMANN

| COLOR | YEAR | MAKE/MODEL | VIN | LICENSE | MILEAGE IN/OUT | TAG |
|-------|------|------------|-----|---------|----------------|-----|
| GRAY | 18 | DODGE CHALLENGER | 2C3CDZAG0JH217289 | TNS861 | 7222/7224 | T7720 |

| DEL DATE | PROD. DATE | WARR. EXP. | PROMISED | PO NO. | RATE | PAYMENT | INV. DATE |
|----------|-----------|-----------|----------|--------|------|---------|-----------|
| 02APR18 DD | 05FEB2021 | 14:00 28AUG18 | | | 140.00 | CASH | 14SEP18 |

| R.O. OPENED | READY | OPTIONS: | SOLD-STK:WD18113 ENG:3.6 Liter |
|-------------|-------|----------|--------------------------------|
| 07:32 17AUG18 | 13:48 14SEP18 | | |

| LINE | OPCODE | TECH | TYPE | HOURS | | LIST | NET | TOTAL |
|------|--------|------|------|-------|--|------|-----|-------|
| | 85410000 DIAGNOSTIC | | | | | | | |
| | | 1337 | WPD | | | | | (N/C) |
| | FC: PART: COUNT: 1 | | | | | | | |
| | CLAIM TYPE: W | | | | | | | |
| | AUTH CODE: | | | | | | | |
| | | | | | | | | |
| | 11300103 r&i exhaust system | | | | | | | |
| | | 1337 | WPD | | | | | (N/C) |
| | 4 68249370AB BOLT KIT | | | | | | | (N/C) |
| | @ LA | | | | | | | |
| | 1 68232947AB LUBRICANT-GEAR | | | | | | | (N/C) |
| | 1 68282414AC DIFFERENT-REAR AXLE | | | | | | | (N/C) |
| | 2 6511173AA BOLT-HEX FLANGE HEAD | | | | | | | (N/C) |
| | 1 68232947AB LUBRICANT-GEAR | | | | | | | (N/C) |
| | FC: | | | | | | | |
| | PART#: 68282414AC | | | | | | | |
| | COUNT: 1 | | | | | | | |
| | CLAIM TYPE: W | | | | | | | |
| | AUTH CODE: | | | | | | | |

7224 CHECK FOR CONDITION, SHIFTED INTO GEAR SEVERAL TIMES, HOIST
VEHICLE AND VISUAL INSPECT, FOUND EXCESSIVE PLAY FROM REAR DIFF SIDE
GEARS. RECOMMEND REAR DIFF THEN RECHECK P/A.**** VERIFIED REPAIRS UNDER
WARRANTY. DOWN UNIT.*****REMOVED EXHAUST SYSTEM, REMOVED REAR
DRIVELINE. REMOVED AXLES AND REAR DIFERENTIAL. INSTALL REPPLACEMENT REAR
DIFF, INSTALL AXLES AND DRIVELINE. INSTALL EXHAUST. CHECK AND TOP OFF
FLUID. ROAD TEST OK.
   *************************************************

ON BEHALF OF SERVICING DEALER, I HEREBY CERTIFY THAT THE INFORMATION CONTAINED HEREON IS ACCURATE UNLESS OTHERWISE SHOWN. SERVICES DESCRIBED WERE PERFORMED AT NO CHARGE TO OWNER. THERE WAS NO INDICATION FROM THE APPEARANCE OF THE VEHICLE OR OTHERWISE, THAT ANY PART REPAIRED OR REPLACED UNDER THIS CLAIM HAD BEEN CONNECTED IN ANY WAY WITH ANY ACCIDENT, NEGLIGENCE OR MISUSE. RECORDS SUPPORTING THIS CLAIM ARE AVAILABLE FOR (1) YEAR FROM THE DATE OF PAYMENT NOTIFICATION AT THE SERVICING DEALER FOR INSPECTION BY MANUFACTURER'S REPRESENTATIVE.

STATEMENT OF DISCLAIMER
The factory warranty constitutes all of the warranties with respect to the sale of this item/items. The Seller hereby expressly disclaims all warranties either express or implied, including any implied warranty of merchantability or fitness for a particular purpose. Seller neither assumes nor authorizes any other person to assume for it any liability in connection with the sale of this item/items.

| DESCRIPTION | TOTALS |
|-------------|--------|
| LABOR AMOUNT | |
| PARTS AMOUNT | |
| GAS, OIL, LUBE | |
| SUBLET AMOUNT | |
| MISC. CHARGES | |
| TOTAL CHARGES | |
| LESS INSURANCE | |
| SALES TAX | |
| PLEASE PAY THIS AMOUNT | |

(SIGNED)   DEALER, GENERAL MANAGER OR AUTHORIZED PERSON   (DATE)     CUSTOMER SIGNATURE

Copyright 2014 CDK Global, LLC  SERVICE INVOICE TYPE 3 - DJC - IMAGING

**CUSTOMER COPY SERVICE**

CUSTOMER #: ████6598

**Cutter**

Cutter Chrysler Jeep Dodge of Pearl City
License No. RD-4118
905 Kamehameha Highway
Pearl City, Hawaii 96782-2501
Ph: (808) 564-9316   Fax: (808) 564-9317
Visit us online at: www.cuttercars.com

34151

INVOICE

MIGNONETTE N OLIVAS

WAHIAWA, HI 967863690
HOME: ████████   CONT ████████
BUS:           CELL: ████████

PAGE 4

SERVICE ADVISOR: 9444 SHANNA HERRMANN

| COLOR | YEAR | MAKE/MODEL | VIN | LICENSE | MILEAGE IN/OUT | TAG |
|-------|------|------------|-----|---------|----------------|-----|
| GRAY | 18 | DODGE CHALLENGER | 2C3CDZAG0JH217289 | TNS861 | 7222/7224 | T7720 |

| DEL DATE | PROD. DATE | WARR. EXP. | PROMISED | PO NO. | RATE | PAYMENT | INV. DATE |
|----------|------------|------------|----------|--------|------|---------|-----------|
| 02APR18 DD | 05FEB2021 | 14:00 28AUG18 | | | 140.00 | CASH | 14SEP18 |

| R.O. OPENED | READY | OPTIONS: SOLD-STK:WD18113 ENG:3.6_Liter |
|-------------|-------|------------------------------------------|
| 07:32 17AUG18 | 13:48 14SEP18 | |

LINE OPCODE TECH TYPE HOURS                    LIST        NET        TOTAL

```
* * * * * * * * * * I M P O R T A N T * * * * * * * * * * *
*  YOU MAY RECEIVE A CUSTOMER SATISFACTION           *
*  SURVEY FROM CHRYSLER CORPORATION                  *
*  IF, FOR ANY REASON YOU CANNOT GRADE US            *
*  COMPLETELY SATISFIED, PLEASE CONTACT              *
*  JESSE MORGAN, SERVICE MANAGER 808-564-9803 *
* * * * * * * * * * * * * * * * * * * * * * * * * * * *
```

ON BEHALF OF SERVICING DEALER, I HEREBY CERTIFY THAT THE INFORMATION CONTAINED HEREIN IS ACCURATE UNLESS OTHERWISE SHOWN. SERVICES DESCRIBED WERE PERFORMED AT NO CHARGE TO OWNER. THERE WAS NO INDICATION FROM THE APPEARANCE OF THE VEHICLE (OR OTHERWISE, THAT ANY PART REPAIRED OR REPLACED UNDER THIS CLAIM HAD BEEN CONNECTED IN ANY WAY WITH ANY ACCIDENT, NEGLIGENCE OR MISUSE. RECORDS SUPPORTING THIS CLAIM ARE AVAILABLE FOR (1) YEAR FROM THE DATE OF PAYMENT NOTIFICATION AT THE SERVICING DEALER FOR INSPECTION BY MANUFACTURER'S REPRESENTATIVE.

STATEMENT OF DISCLAIMER
The factory warranty constitutes all of the warranties with respect to the sale of this item/items. The Seller hereby expressly disclaims all warranties either express or implied, including any implied warranty of merchantability or fitness for a particular purpose. Seller neither assumes nor authorizes any other person to assume for it any liability in connection with the sale of this item/items.

| DESCRIPTION | TOTALS |
|-------------|--------|
| LABOR AMOUNT | 0.00 |
| PARTS AMOUNT | 0.00 |
| GAS, OIL, LUBE | 0.00 |
| SUBLET AMOUNT | 0.00 |
| MISC. CHARGES | 0.00 |
| TOTAL CHARGES | 0.00 |
| LESS INSURANCE | 0.00 |
| SALES TAX | 0.00 |
| PLEASE PAY THIS AMOUNT | 0.00 |

(SIGNED)   DEALER, GENERAL MANAGER OR AUTHORIZED PERSON   (DATE)      CUSTOMER SIGNATURE

Copyright 2014 EDK Global, LLC  SERVICE INVOICE TYPE F - SVC - IMAGING

CUSTOMER COPY SERVICE

**Cutter**

**Cutter Chrysler Jeep Dodge of Pearl City**
License No. RD-4118
905 Kamehameha Highway
Pearl City, Hawaii 96782-2501
Ph: (808) 564-9316  Fax: (808) 564-9317
Visit us online at: *www.cuttercars.com*

CUSTOMER #: ██████6598

35797

INVOICE

MIGNONETTE N OLIVAS
██████████████
WAHIAWA, HI 967863690
HOME: ██████████████  CONT ██████████
BUS: ██████████  CELL: ██████████████

PAGE 1

SERVICE ADVISOR: 9444 SHANNA HERRMANN

| COLOR | YEAR | MAKE/MODEL | VIN | LICENSE | MILEAGE IN/OUT | TAG |
|-------|------|------------|-----|---------|----------------|-----|
| GRAY | 18 | DODGE CHALLENGER | 2C3CDZAG0JH217289 | TNS861 | 7255/7255 | T8597 |

| DEL DATE | PROD. DATE | WARR. EXP. | PROMISED | PO NO. | RATE | PAYMENT | INV. DATE |
|----------|-----------|-----------|----------|--------|------|---------|-----------|
| 02APR18 DD | | 05FEB2021 | 16:30 03OCT18 | | 140.00 | CASH | 22OCT18 |

| R.O. OPENED | READY | OPTIONS: | SOLD-STK:WD18113 | ENG:3.6 Liter |
|-------------|-------|----------|------------------|---------------|
| 16:19 03OCT18 | 12:11 22OCT18 | | | |

LINE OPCODE TECH TYPE HOURS                               LIST       NET      TOTAL
A DURING WORK TO RO 34151, DAMAGED OCCURED TO VEHICLE. PLEASE SUBLET TO
        BABAS AUTO GLASS FOR PAINT REPAIRS.
CAUSE: .
        SUBLET SUBLET
                900      ILD                                                    (N/C)
SUBL AWRS OF HI INV#TR17861 PO#113631
                ILD                                                            (N/C)
SUBL BABAS INV#50586/PO#113632
                ILD                                                            (N/C)
        7255 SUBLET VEHICLE FOR NEEDED PAINT REPAIRS AT BABAS AUTO GLOSS.
        ********************************************************
B PJ3531 COURTESY ALTERNATE TRANSPORTATION
        RENTAL RENTAL UNIT
                1234     ID                                                     (N/C)

        * * * * * I M P O R T A N T * * * * * *
        * YOU MAY RECEIVE A CUSTOMER SATISFACTION *
        * SURVEY FROM CHRYSLER CORPORATION        *
        * IF, FOR ANY REASON YOU CANNOT GRADE US  *
        * COMPLETELY SATISFIED, PLEASE CONTACT    *
        * JESSE MORGAN, SERVICE MANAGER 808-564-9803*

PAID OCT 22 2018
PAID BY

ON BEHALF OF SERVICING DEALER, I HEREBY CERTIFY THAT THE
INFORMATION CONTAINED HEREON IS ACCURATE UNLESS OTHERWISE
SHOWN. SERVICES DESCRIBED WERE PERFORMED AT NO CHARGE TO
OWNER. THERE WAS NO INDICATION FROM THE APPEARANCE OF THE
VEHICLE OR OTHERWISE, THAT ANY PART REPAIRED OR REPLACED
UNDER THIS CLAIM HAD BEEN CONNECTED IN ANY WAY WITH ANY
ACCIDENT, NEGLIGENCE OR MISUSE. RECORDS SUPPORTING THIS
CLAIM ARE AVAILABLE FOR (1) YEAR FROM THE DATE OF PAYMENT
NOTIFICATION AT THE SERVICING DEALER FOR INSPECTION BY
MANUFACTURER'S REPRESENTATIVE.

STATEMENT OF DISCLAIMER
The factory warranty constitutes all of the warranties with respect to the sale of this item/items. The Seller hereby expressly disclaims all warranties either express or implied, including any implied warranty of merchantability or fitness for a particular purpose. Seller neither assumes nor authorizes any other person to assume for it any liability in connection with the sale of this item/items.

| DESCRIPTION | TOTALS |
|-------------|--------|
| LABOR AMOUNT | 0.00 |
| PARTS AMOUNT | 0.00 |
| GAS, OIL, LUBE | 0.00 |
| SUBLET AMOUNT | 0.00 |
| MISC. CHARGES | 0.00 |
| TOTAL CHARGES | 0.00 |
| LESS INSURANCE | 0.00 |
| SALES TAX | 0.00 |
| PLEASE PAY THIS AMOUNT | 0.00 |

(SIGNED)   DEALER, GENERAL MANAGER OR AUTHORIZED PERSON   (DATE)

CUSTOMER SIGNATURE

EXHIBIT D
CUSTOMER COPY SERVICE

Copyright 2014 CDK Global, LLC  SERVICE INVOICE TYPE 7 - SI2C - IMAGING

**Cutter**

Cutter Chrysler Jeep Dodge of Pearl City
License No. RD-4118
905 Kamehameha Highway
Pearl City, Hawaii 96782-2501
Ph: (808) 564-9316   Fax: (808) 564-9317
Visit us online at: www.cuttercars.com

CUSTOMER #: ████6598                          36434

                                            INVOICE

MIGNONETTE N OLIVAS
████████████
WAHIAWA, HI 967863690                        PAGE 1
HOME: ████████   CONT ████
BUS: ████████    CELL: ████████   SERVICE ADVISOR: 9444 SHANNA HERRMANN

| COLOR | YEAR | MAKE/MODEL | VIN | LICENSE | MILEAGE IN/OUT | TAG |
|-------|------|------------|-----|---------|----------------|-----|
| GRAY | 18 | DODGE CHALLENGER | 2C3CDZAG0JH217289 | TNS861 | 7319/7319 | T2230 |

| DEL DATE | PROD. DATE | WARR. EXP. | PROMISED | PO NO. | RATE | PAYMENT | INV. DATE |
|----------|-----------|-----------|----------|--------|------|---------|-----------|
| 02APR18 DD | | 05FEB2021 | 16:30 22OCT18 | | 140.00 | CASH | 30OCT18 |

| R.O. OPENED | READY | OPTIONS: SOLD-STK:WD18113 ENG:3.6 Liter |
|-------------|-------|------|
| 13:59 22OCT18 | 13:58 30OCT18 | |

LINE OPCODE TECH TYPE HOURS                               LIST      NET      TOTAL
A CUSTOMER STATES LOT DAMAGE OCURED ON RO 34157, SUBLET VEHICLE TO BODY
        SHOP BUT DAMAGES STILL PRESENT. PLEASE INSPECT DAMAGES AND
        SUBLET TO BODYSHOP FOR REPAIRS.
CAUSE: .
        SUBLET SUBLET
          1234   ILD                                                    (N/C)
SUBL AUTO DETAIL CENTER INV 430276
          ILD                                                          (N/C)
    7319 SUBLET TO AUTO DETAIL CENTER FOR COLORSAND, BUFF, POLISH AND
WAX. VEHICLE RETURNED OKAY.
        *****************************************************
B PJ18031- COURTESY ALTERNATE VEHICLE PROVIDED
        RENTAL RENTAL UNIT
          1234   ILD                                                    (N/C)
        *****************************************************

          * * * * * * * * * I M P O R T A N T * * * * * * * * *
          *  YOU MAY RECEIVE A CUSTOMER SATISFACTION
          *  SURVEY FROM CHRYSLER CORPORATION
          *  IF, FOR ANY REASON YOU CANNOT GRADE US
          *  COMPLETELY SATISFIED, PLEASE CONTACT
          *  JESSE MORGAN, SERVICE MANAGER 808-564-9803*
          * * * * * * * * * * * * * * * * * * * * * * * * * *



PAID
OCT 30 2018
PAID BY:

ON BEHALF OF SERVICING DEALER, I HEREBY CERTIFY THAT THE INFORMATION CONTAINED HEREON IS ACCURATE UNLESS OTHERWISE SHOWN. SERVICES DESCRIBED WERE PERFORMED AT NO CHARGE TO OWNER. THERE WAS NO INDICATION FROM THE APPEARANCE OF THE VEHICLE OR OTHERWISE, THAT ANY PART REPAIRED OR REPLACED UNDER THIS CLAIM HAD BEEN CONNECTED IN ANY WAY WITH ANY ACCIDENT, NEGLIGENCE OR MISUSE. RECORDS SUPPORTING THIS CLAIM ARE AVAILABLE FOR (1) YEAR FROM THE DATE OF PAYMENT NOTIFICATION AT THE SERVICING DEALER FOR INSPECTION BY MANUFACTURER'S REPRESENTATIVE.

STATEMENT OF DISCLAIMER
The factory warranty constitutes all of the warranties with respect to the sale of this item/items. The Seller hereby expressly disclaims all warranties either express or implied, including any implied warranty of merchantability or fitness for a particular purpose. Seller neither assumes nor authorizes any other person to assume for it any liability in connection with the sale of this item/items.

| DESCRIPTION | TOTALS |
|-------------|--------|
| LABOR AMOUNT | 0.00 |
| PARTS AMOUNT | 0.00 |
| GAS, OIL, LUBE | 0.00 |
| SUBLET AMOUNT | 0.00 |
| MISC. CHARGES | 0.00 |
| TOTAL CHARGES | 0.00 |
| LESS INSURANCE | 0.00 |
| SALES TAX | 0.00 |
| PLEASE PAY THIS AMOUNT | 0.00 |

(SIGNED)   DEALER, GENERAL MANAGER OR AUTHORIZED PERSON   (DATE)     CUSTOMER SIGNATURE

EXHIBIT E
CUSTOMER COPY SERVICE

Copyright 2014 CDK Global, LLC   SERVICE INVOICE TYPE 7   SVDE (HARDIE)

## VERIFICATION OF COMPLAINT AND CERTIFICATION

STATE OF HAWAII                    )
COUNTY OF HAWAII                   )

Pursuant to Rule 7(g) of the Rules of the Circuit Courts of the State of Hawaii, Plaintiff, Mignonette Olivas, verifies, certifies, and declares as follows:

1. I am the Plaintiff in this civil proceeding.

2. I have read the above-entitled civil Complaint prepared by my attorney and I believe that all of the facts contained in it are true, to the best of my knowledge, information and belief formed after reasonable inquiry.

3. I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.

4. I believe that this civil Complaint is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in the Complaint.

5. I have filed this civil Complaint in good faith and solely for the purposes set forth in it.

6. Each and every exhibit I have provided to my attorney which has been attached to this Complaint is a true and correct copy of the original.

7. Except for clearly indicated redactions made by my attorneys where appropriate, I have not altered, changed, modified, or fabricated these exhibits, except that some of the attached exhibits may contain some of my own handwritten notations.

I declare under penalty of law that the foregoing is true and correct.

Executed on: ___1 / 10 / 19_____

                              By: _Mignette Ol____
                                  / MIGNONETTE OLIVAS

| STATE OF HAWAI'I<br>CIRCUIT COURT<br>OF THE FIRST CIRCUIT | SUMMONS<br>TO ANSWER CIVIL COMPLAINT | CASE NUMBER<br>19-1-0105-01 GWBC |
|---|---|---|

| PLAINTIFF,<br><br>MIGNONETTE OLIVAS | VS. | DEFENDANT.<br>CUTTER CJD, INC. (d/b/a CUTTER DODGE CHRYSLER JEEP PEARL CITY), FCA US, LLC (d/b/a CHRYSLER CORPORATION, and CHRYSLER GROUP, LLC), and DOE DEFENDANTS 1-10 |
|---|---|---|

PLAINTIFF'S ADDRESS (NAME, ADDRESS, TEL. NO.)
Mignonette Olivas
c/o Justin A. Brackett, Esq.
515 Ward Avenue
Honolulu, Hawaii 96814
Tel: 808-377-6778

## TO THE ABOVE-NAMED DEFENDANT(S)

You are hereby summoned and required to file with the court and serve upon
Justin A. Brackett, Esq., 515 Ward Avenue, Honolulu, Hawaii 96814
_____ ,
plaintiff's attorney, whose address is stated above, an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the date of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

**THIS SUMMONS SHALL NOT BE PERSONALLY DELIVERED BETWEEN 10:00 P.M. AND 6:00 A.M. ON PREMISES NOT OPEN TO THE GENERAL PUBLIC, UNLESS A JUDGE OF THE ABOVE-ENTITLED COURT PERMITS, IN WRITING ON THIS SUMMONS, PERSONAL DELIVERY DURING THOSE HOURS.**

**A FAILURE TO OBEY THIS SUMMONS MAY RESULT IN AN ENTRY OF DEFAULT AND DEFAULT JUDGMENT AGAINST THE DISOBEYING PERSON OR PARTY.**

| DATE ISSUED | CLERK | SUMMONS DENIED<br>LEGAL DOCUMENTS BR<br>Circuit Court Clerk | |
|---|---|---|---|
| I do hereby certify that this is full, true, and correct copy of the original on file in this office | | | |

♿ In accordance with the Americans with Disabilities Act and other applicable state and federal laws, if you require a reasonable accommodation for a disability, please contact the ADA Coordinator at the First Circuit Court Administration Office at PHONE NO. 539-4333, FAX 539-4322, or TTY 539-4853, at least ten (10) working days prior to your hearing or appointment date.

Reprographics (07/11)   RevaComm 508 Certified

SUMMONS TO ANSWER CIVIL COMPLAINT  1C-P-767

| **STATE OF HAWAI'I** CIRCUIT COURT OF THE FIRST CIRCUIT | **SUMMONS** TO ANSWER Amended Complaint | **Civil Case Number:** 19-1-0105-01 GWBC |
|---|---|---|

| PLAINTIFF, MIGNONETTE OLIVAS | VS. | DEFENDANT. CUTTER CJD, INC. (d/b/a CUTTER DODGE CHRYSLER JEEP PEARL CITY), FCA US, LLC (d/b/a CHRYSLER CORPORATION, and CHRYSLER GROUP, LLC), and DOE DEFENDANTS 1-10 |
|---|---|---|

PLAINTIFF'S ADDRESS (NAME, ADDRESS, TEL. NO.)
Mignonette Olivas
c/o Justin A. Brackett, Esq.
515 Ward Avenue
Honolulu, Hawaii 96814
Tel: 808-377-6778

**TO THE ABOVE-NAMED DEFENDANT(S)**

You are hereby summoned and required to file with the court and serve upon

Justin A. Brackett, Esq., 515 Ward Avenue, Honolulu, Hawaii 96814 **Amended Complaint** ,

plaintiff's attorney, whose address is stated above, an answer to the ~~complaint~~ which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the date of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the **Amended Complaint.**

**THIS SUMMONS SHALL NOT BE PERSONALLY DELIVERED BETWEEN 10:00 P.M. AND 6:00 A.M. ON PREMISES NOT OPEN TO THE GENERAL PUBLIC, UNLESS A JUDGE OF THE ABOVE-ENTITLED COURT PERMITS, IN WRITING ON THIS SUMMONS, PERSONAL DELIVERY DURING THOSE HOURS.**

**A FAILURE TO OBEY THIS SUMMONS MAY RESULT IN AN ENTRY OF DEFAULT AND DEFAULT JUDGMENT AGAINST THE DISOBEYING PERSON OR PARTY.**

| DATE ISSUED FEB 20 2019 | CLERK N. ANAYA (SEAL – FIRST CIRCUIT COURT, STATE OF HAWAII) | 2019 FEB 20 PM 1:15 N. ANAYA CLERK FIRST CIRCUIT COURT STATE OF HAWAII FILED |
|---|---|---|
| I do hereby certify that this is full, true, and correct copy of the original on file in this office | Circuit Court Clerk I do hereby certify that this is a full, true, and correct copy of the original on file in this office. Clerk, Circuit Court, First Circuit | |

In accordance with the Americans with Disabilities Act and other applicable state and federal laws, if you require a reasonable accommodation for a disability, please contact the ADA Coordinator at the First Circuit Court Administration Office at PHONE NO. 539-4333, FAX 539-4322, or TTY 539-4853, at least ten (10) working days prior to your hearing or appointment date.

Reprographics (07/11)   RevaComm 508 Certified

SUMMONS TO ANSWER CIVIL ~~COMPLAINT~~ 1C-P-787
Amended Complaint

# LAW OFFICES OF JUSTIN A. BRACKETT

515 Ward Avenue • Honolulu, Hawaii 96814



**March 1, 2019**

FCA US, LLC
c/o Brian Tilker, Attorney At Law
700 Bishop St.
Fl 15
Honolulu, HI 96813-4116

RE: Amended Complaint – Mignonette Olivas v. CUTTER CJD, INC. et. al.; Hawaii Circuit
Court Civil # 19-1-0105-01 GWBC

Dear Brian:

    Enclosed is the Amended Complaint in the above-referenced case. There have been no
changes except the added signature. Have a wonderful day!

                                  Sincerely,

                                    *Stacey McMahan*

                                    Stacey McMahan,
                                    Legal Assistant to
                                    Justin A. Brackett, Esq.