# Exhibit M

2019 WL 693234

2019 WL 693234
Only the Westlaw citation is currently available.
United States District Court, N.D. California.

IN RE: VOLKSWAGEN "CLEAN DIESEL" MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION
This Order Relates to: MDL Dkt. No. 3768

MDL No. 2672 CRB (JSC)
|
Signed 02/19/2019

## ORDER DENYING MOTION TO REMAND

CHARLES R. BREYER, United States District Judge

*1 This order addresses ECF No. 3768, a motion to remand certain cases to Alabama state court. The plaintiffs are individuals and couples who bought Volkswagen TDI diesel-engine cars, and who either opted out of the Court-approved class action settlements with Volkswagen, or who were not members of those classes because they sold their cars before the class period began. When filed, the ECF No. 3768 motion covered 20 separate cases. Some of those cases have been terminated and nine remain pending today.[1]

Volkswagen Group of America, Inc. ("VWGoA") is the sole defendant in the ECF No. 3768 cases. It removed the cases on the basis of both federal question and diversity subject-matter jurisdiction. Plaintiffs, in their motion to remand, have argued that neither form of jurisdiction is present. The Court considers at this time only whether it has jurisdiction on the basis of diversity. Concluding that it does, it DENIES the ECF No. 3768 motion to remand.

### I. BACKGROUND

Plaintiffs allege that VWGoA marketed its TDI diesel-engine cars as having low emissions, good gas mileage, and an environmentally-friendly engine. (*E.g.*, Swanson Compl. ¶¶ 8-13, Case No. 3:16-cv-4363, Dkt. 1-1.) To obtain these benefits, Plaintiffs allege that they agreed to pay premium prices for the cars. (*Id.* ¶¶ 10-11.)

In fact, the cars did not have low emissions and were not good for the environment. And not only were the cars' emissions higher than represented, but VWGoA knew this. (*Id.* ¶¶ 14-15, 21.) VWGoA knew that the cars could not perform as promised and had specifically developed and installed software in them that detected and evaded emissions testing. (*Id.* ¶¶ 12, 16-17.) During testing, the cars appeared to satisfy governing emission standards; but when the cars were on the road, they emitted nitrogen oxides at up to 40 times the legal limits. (*Id.* ¶¶ 22, 24.)

In September 2015, in response to state and federal investigations, VWGoA admitted that it had equipped its TDI diesel-engine cars with emissions-cheating software, and that it had been doing so since 2009. (*Id.* ¶¶ 16, 19-20.) Plaintiffs allege that the software has "substantially impaired [the cars'] use, value and safety," and that the cars' performance will be adversely affected if the cars are modified to meet emission standards. (*Id.* ¶¶ 25, 31.)

The ECF No. 3768 complaints each include five claims against VWGoA. The claims are for (1) fraud and suppression, (2) fraud in the inducement, (3) breach of an express warranty, (4) breach of an implied warranty, and (5) violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301–12. Plaintiffs seek actual and punitive damages and attorneys' fees. (*Id.*, Prayer for Relief.) In each case, they seek a judgment that will not exceed "a total of $49,990 plus costs, and interest." (*Id.*)

VWGoA removed Plaintiffs' cases to federal court, in part on the basis of diversity subject-matter jurisdiction. (*E.g.*, Bradley Notice of Removal, Case No. 3:16-cv-6650, Dkt. No. 1.) Plaintiffs responded by filing the ECF No. 3768 motion to remand.

### II. LEGAL STANDARD

*2 A defendant who seeks to remove a case to federal court must file a notice of removal "containing a short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a). This "short and plain statement" requirement mirrors the one found in Rule 8(a)(1) of the Federal Rules of Civil Procedure, the general pleading rule for cases filed in federal court. The use of the same language is "[b]y design," the Supreme Court has explained: "Congress, by borrowing the familiar 'short and plain statement' standard from Rule 8(a), intended to 'simplify the "pleading" requirements for removal' and

**EXHIBIT "M"**

to clarify that courts should 'apply the same liberal rules to removal allegations that are applied to other matters of pleading.' " *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 553 (2014) (quoting H.R. Rep. No. 100–889, at 71 (1988) ).

Highlighting this symmetry, the Ninth Circuit explained in *Leite v. Crane Co.*, 749 F.3d 1117 (9th Cir. 2014), that notices of removal, like complaints that are originally filed in federal court, must comply with the familiar *Twombly/Iqbal* pleading standard, and that jurisdictional challenges to removal should be resolved within the framework that governs motions to dismiss complaints for lack of subject-matter jurisdiction:

> Like plaintiffs pleading subject-matter jurisdiction under Rule 8(a)(1), a defendant seeking to remove an action may not offer mere legal conclusions; it must allege the underlying facts supporting each of the requirements for removal jurisdiction. A plaintiff who contests the existence of removal jurisdiction may file a motion to remand, *see* 28 U.S.C. § 1447(c), the functional equivalent of a defendant's motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1). As under Rule 12(b)(1), a plaintiff's motion to remand may raise either a facial attack or a factual attack on the defendant's jurisdictional allegations....

*Leite*, 749 F.3d at 1122 (citation omitted).

The *Leite* court also summarized the rules governing facial and factual attacks to jurisdiction:

> A "facial" attack accepts the truth of the ... allegations but asserts that they are insufficient on their face to invoke federal jurisdiction. The district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the ... allegations as true ..., the court determines whether [they] are sufficient as a legal matter to invoke the court's jurisdiction.

> A "factual" attack, by contrast, contests the truth of the ... factual allegations, usually by introducing evidence outside the pleadings. When the [party contesting jurisdiction] raises a factual attack, the [party asserting jurisdiction] must support her jurisdictional allegations with competent proof, under the same evidentiary standard that governs in the summary judgment context. The [party asserting jurisdiction] bears the burden of proving by a preponderance of the evidence that each of the requirements for subject-matter jurisdiction has been met.

*Id.* at 1121 (citations and internal quotation marks omitted).

One form of federal subject-matter jurisdiction, which is the only form considered in this Order, is diversity: district courts have subject-matter jurisdiction over civil cases where (1) the matter "is between ... citizens of different States," and (2) the amount in controversy "exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a)(1). Consistent with the framework outlined above, "[t]he party seeking to invoke the district court's diversity jurisdiction always bears the burden of both pleading and proving diversity jurisdiction." *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 613-14 (9th Cir. 2016).[2]

*3 Subject-matter jurisdiction must exist when a case is first filed. A federal court that is considering whether it has jurisdiction on the basis of diversity must therefore consider "the state of things at the time of the action brought." *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 473 (2007) (quoting *Mullan v. Torrance*, 9 Wheat. 537, 539 (1824) ). This means examining whether the parties' citizenship was diverse and whether the amount in controversy exceeded $75,000 at the time the case was originally filed.

### III. DISCUSSION

VWGoA, as the removing party, bears the burden of demonstrating that this Court has diversity jurisdiction over the ECF No. 3768 cases. Whether VWGoA has satisfied that burden is considered next.

**A. Diversity of Citizenship**
Diversity jurisdiction requires "complete diversity": "each plaintiff must be of a different citizenship from each defendant." *Grancare, LLC v. Mills ex rel. Thrower*, 889 F.3d 543, 548 (9th Cir. 2018). The rules governing citizenship

differ for corporations and natural persons. A corporation is a citizen of its state of incorporation and of the state where it has its principal place of business. *See* 28 U.S.C. § 1332(c)(1). A natural person is a citizen in the state of her domicile, which is generally identified though "a compound of physical presence plus an intention to make a certain definite place one's permanent abode." *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).

VWGoA's notices of removal in the ECF No. 3768 cases include citizenship allegations that mirror the following:

> At all relevant times, including the time of filing the Complaint and the time of removal, plaintiff Lewel Bradley ("plaintiff") is and was a citizen of the state of Alabama. *See* Compl. ¶ 1.
>
> At all relevant times, including the time of filing the Complaint and the time of removal, VWGoA is and was incorporated under the laws of the state of New Jersey and maintains and maintained its principal place of business in the state of Virginia. *See* Compl. ¶ 2. Therefore, VWGoA is and was a citizen of New Jersey and Virginia within the meaning of 28 U.S.C. § 1332(c). VWGoA is not incorporated in the state of Alabama, and does not maintain its principal place of business in the state of Alabama. VWGoA is not a citizen of Alabama.
>
> Because VWGoA is not a citizen of the state of Alabama, diversity of citizenship is satisfied under 28 U.S.C. § 1332(a).

(*E.g.*, Bradley Notice of Removal ¶¶ 5-7.)

Plaintiffs have not contested the truth of these allegations, nor have they argued that the allegations are insufficient. In other words, they have not made a facial or factual attack on VWGoA's citizenship allegations. The Court nevertheless considers the sufficiency of the allegations because it has an independent obligation to examine its subject-matter jurisdiction. *See FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990).

VWGoA, as the removing party, need only provide "a short and plain statement of the grounds for removal," 28 U.S.C. § 1446(a), in which it "allege[s] the underlying facts supporting each of the requirements for removal jurisdiction," *Leite*, 749 F.3d at 1122. The requirement at issue here is complete diversity; and VWGoA has alleged the underlying facts supporting this requirement by alleging that it was a citizen of New Jersey and Virginia and that Plaintiffs were citizens of Alabama when the complaints were filed. These allegations are sufficient to support that Plaintiffs and VWGoA were citizens of different states when the cases began. The requirement of complete diversity is therefore satisfied.

**B. Amount in Controversy**

*\*4* When removal is based on diversity jurisdiction under 28 U.S.C. § 1332(a), the defendant bears the burden of establishing that the amount in controversy exceeds $75,000. Consistent with the pleading requirements outlined above, the Supreme Court has explained that "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee*, 135 S. Ct. at 554. But when the plaintiff challenges the defendant's allegations of the amount in controversy, "[e]vidence establishing the amount is required." *Id.*; *see also Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (citing *Dart Cherokee* for the same proposition).

Plaintiffs, in their motion to remand, have challenged VWGoA's amount-in-controversy allegations, and VWGoA has submitted evidence in support of its allegations in response. The Court therefore construes the ECF No. 3768 motion as making a factual attack on the amount in controversy.

Before considering VWGoA's evidence, however, a preliminary issue must be addressed. Plaintiffs, in their complaints, have explicitly demanded judgments "not to exceed ... $49,990 plus costs, and interest." (*E.g.*, Swanson, Prayer for Relief.) These caps on the amounts sought will control unless it is established that the state where the actions were first filed "either does not permit demand for a specific sum or permits recovery of damages in excess of the amount demanded." 28 U.S.C. § 1446(c)(2)(A)(ii).

Plaintiffs filed the ECF No. 3768 cases in Alabama state court, and Alabama "permits recovery of damages in excess of the amount demanded." *Id.* Specifically, the Alabama Supreme Court has construed Alabama Rule of Civil Procedure 54(c), which provides that a final judgment may grant relief to parties that was not demanded in their pleadings, as "ensur[ing] that the relief available to a plaintiff [is] not limited by the pleadings filed by his attorney." *Fuller v. Preferred Risk Life Ins. Co.*, 577 So. 2d 878, 883 (Ala. 1991). Given Alabama's practice, Plaintiffs' demands for judgments

not to exceed $49,990 are not binding, and VWGoA's evidence of the amounts in controversy may be considered.

The evidence falls into three categories: proof of actual damages in dispute, proof of punitive damages in dispute, and proof of attorneys' fees in dispute. Each category is considered in turn below. In considering the evidence, the Court must determine whether a preponderance of it supports that the $75,000 threshold has been passed. *See Leite*, 749 F.3d at 1121 (preponderance of the evidence standard applies to factual attacks on jurisdiction); *Ibarra*, 775 F.3d at 1197 (preponderance of the evidence standard applies "where, as here, defendant's assertion of the amount in controversy is contested by plaintiffs").

### 1. Actual Damages

VWGoA has offered evidence of the purchase prices of the cars at issue. It contends that these amounts are an accurate measure of the amounts of actual damages in dispute.

Under Alabama law, the measure of damages in an action "based on fraud in the inducement of a purchase ... is generally the difference between the value of the property as represented and its actual value." *Reynolds v. Mitchell*, 529 So. 2d 227, 233 (Ala. 1988). Similarly, Alabama generally measures damages for breach of a warranty as "the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted." *City Car Sales, Inc. v. McAlpin*, 380 So. 2d 865, 868 (Ala. Civ. App. 1979) (quoting Ala. Code § 7–2–714(2) ).

*5 Under these standards, for Plaintiffs' damages to be equal to the full amount that they paid to buy the cars, the trier of fact will need to determine that the cars, because they used emissions-cheating software and emitted pollutants at levels well above the legal limits, had no value. This seems like an unlikely conclusion given that the software did not make the cars inoperative, and Plaintiffs presumably obtained some benefit from driving them.

Nevertheless, to the extent that the cars retained some value, Plaintiffs have made no attempt to quantify that value. In fact, they do not even challenge VWGoA's contention that they seek to recover the full amount that they paid to buy the cars. It could be argued that Plaintiffs do not need to make such a showing, as it is VWGoA that bears the burden of proof. But VWGoA has offered evidence of the amount of actual damages in controversy, and Plaintiffs have made no attempt to rebut that evidence. A plaintiff cannot file a motion to remand and then stand idly by when the defendant submits evidence to support the amount in controversy. Indeed, when the amount in controversy is in question, "the Supreme Court has said that *both sides* submit proof and the court then decides where the preponderance lies." *Ibarra*, 775 F.3d at 1198 (emphasis added) (citing *Dart Cherokee*, 135 S. Ct. at 554-55).

The amount in controversy is "not a prospective assessment of [the] defendant's liability;" it is "simply an estimate of the total amount in dispute." *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010). Given VWGoA's evidence and Plaintiffs' silence, it appears likely that the purchase prices of the cars are indeed in dispute.

\* \* \*

Consistent with the approach VWGoA has taken in defending against other motions to remand in this MDL, it has hired Jay R. Lytle, an Analytical Services Manager at Urban Science Applications, Inc., to estimate the amounts that Plaintiffs paid to buy the cars. (*See* Lytle Decl., MDL Dkt. No. 4232-8; Lytle Redacted Exs. A–D, MDL Dkt. No. 5834-3.) For the ECF No. 3768 cases, however, these estimates are unnecessary because Plaintiffs have identified the amounts that they paid for the cars in their complaints. (*See, e.g.*, Harris Compl. ¶ 7, Case No. 3:16-cv-6512 (alleging that "[t]he purchase price was approximately $26,000"); Summers Compl. ¶ 7, Case No. 3:16-cv-3057 (alleging that "[t]he purchase price was approximately $26,804").)

The vehicle purchase prices in the ECF No. 3768 cases range from **$17,991** to **$34,034**. (*Compare* McLeod Compl. ¶ 7, Case No. 3:16-cv-6169, *with* Bradley Compl. ¶ 7, Case No. 3:16-cv-6650.) These amounts represent the actual damages in controversy.

### 2. Punitive Damages

"It is well established that punitive damages are part of the amount in controversy in a civil action." *Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001) (citing *Bell v. Preferred Life Assur. Soc'y*, 320 U.S. 238, 240 (1943); *Goldberg v. CPC Int'l, Inc.*, 678 F.2d 1365, 1367 (9th Cir. 1982) ). Before they may be included, however, two steps must generally be taken. First, the party asserting jurisdiction must establish that punitive damages would be permitted under the applicable state law based on the conduct alleged. *See Davenport v. Mut. Ben. Health & Accident Ass'n*,

325 F.2d 785, 787 (9th Cir. 1963) (noting that exemplary damages should not be included in the amount in controversy "if under the applicable state law [they] would be legally impossible to recover"). Second, if punitive damages are allowed under state law, the amount of punitive damages that are in controversy must be determined. To do so, "[the] party asserting federal diversity jurisdiction may introduce evidence of jury verdicts in cases involving analogous facts." *Surber v. Reliance Nat. Indem. Co.*, 110 F. Supp. 2d 1227, 1232 (N.D. Cal. 2000).

**\*6** Under the circumstances alleged here, punitive damages would be permitted under Alabama law. "[I]n a tort action where it is proven by clear and convincing evidence that the defendant consciously or deliberately engaged in oppression, fraud, wantonness, or malice," Alabama permits punitive damages. Ala. Code § 6–11–20(a). Taking the allegations as true, this standard is satisfied here. Plaintiffs allege that VWGoA represented to them that its TDI diesel-engine cars were environmentally friendly, when in fact VWGoA knew that the cars utilized software to evade emissions testing and emitted nitrogen oxides at levels far exceeding the legal limits. (*E.g.*, Swanson Compl. ¶¶ 8, 12, 16-22.) This amounts to deliberate fraudulent conduct.

As for the amount of punitive damages in controversy, VWGoA has offered evidence of jury verdicts in three cases that it asserts involved facts analogous to those here. The first of these cases is *Johnson v. Ford Motor Company*, 113 P.3d 82 (Cal. 2005), where the plaintiffs sued Ford for concealing that a used car it had sold them had a history of transmission repairs and replacements. *Id.* at 85. Evidence supported that Ford had engaged in similar conduct "in some number of cases in addition to plaintiffs' own, perhaps a large number of other cases." *Id.* at 96. The jury awarded $10 million in punitive damages against Ford, but the California Supreme Court concluded that the award was inconsistent with due process. On remand, the Court of Appeal affirmed a punitive damages award of $175,000, which was just less than 10 times the compensatory damages award. *See Johnson v. Ford Motor Co.*, 135 Cal. App. 4th 137, 150 (2005).

VWGoA next points to *Chrysler Corporation v. Schiffer*, 736 So. 2d 538 (Ala. 1999). The plaintiff there purchased a truck that Chrysler had represented was new but that in fact had been damaged, repaired, and repainted. *Id.* at 540, 546. Finding for the plaintiff, the jury awarded $50,000 in compensatory damages and $325,000 in punitive damages. *Id.* at 540. The Alabama Supreme Court affirmed on the condition that the plaintiff agree to accept a reduced punitive damages award of $150,000, a 3:1 multiple of compensatory damages. *Id.* at 549.

Lastly, VWGoA cites to *BMW of North America, Inc. v. Gore* ("*BMW II*"), 701 So. 2d 507 (Ala. 1997). The plaintiff there alleged that BMW failed to disclose that the car it sold him had been damaged by acid rain during its shipment from Germany and had subsequently been repainted. *Id.* at 508. Evidence at trial supported that BMW had a nationwide policy of not disclosing pre-delivery damage when the cost of repairs did not exceed three percent of the car's suggested retail price, a practice that was illegal in some states but not in others. *See id.* at 509; *see also BMW of N. Am., Inc. v. Gore* ("*BMW I*"), 646 So. 2d 619, 627 n.6 (Ala. 1994). The jury found for the plaintiff and awarded $4,000 in compensatory damages and $4 million in punitive damages. *BMW II*, 701 So. 2d at 509. On appeal, the U.S. Supreme Court held that the $4 million punitive damages award (and even a reduced punitive damages award of $2 million that was entered by the Alabama Supreme Court) was excessive and violated due process. *See BMW of N.A., Inc. v. Gore*, 517 U.S. 559, 562-63, 585-86 (1996). The Alabama Supreme Court, on remand, entered an order requiring the plaintiff to accept a reduced punitive damages award of $50,000, a 12:1 multiple of compensatory damages. *BMW II*, 701 So. 2d at 515.

Based on the awards in *Johnson*, *Schiffer*, and *Gore*, VWGoA argues that a conservative estimate of the punitive damages in controversy in each of the ECF No. 3768 cases is $50,000. That was the amount awarded in *Gore*, and it was the lowest award in the three sample cases. For all of the ECF No. 3768 cases, $50,000 in punitive damages would represent less than a 3:1 multiple of the estimated actual damages, which is also on the low end of the multiples permitted in *Johnson*, *Schiffer*, and *Gore*. Further, although Alabama law includes a cap on punitive damages, awards of $50,000 would not exceed that cap. *See* Ala. Code § 6–11–21(a) (limiting punitive damages to "three times the compensatory damages ... or five hundred thousand dollars ($500,000), whichever is greater").

**\*7** Fraudulent conduct comes in many forms, and it is almost always possible to draw distinctions between the facts of one fraud and another. But when *Johnson*, *Schiffer*, and *Gore* are stripped to their essentials, they offer reasonable comparisons to this case. Each involved a global car manufacturer that deceived its customers about the characteristics of its cars. And in *Johnson* and (to a lesser degree) in *Gore*, evidence also

supported that the deceit was part of a pattern of fraudulent business practices, as is alleged here.

At this stage, the question is whether at least $50,000 in punitive damages is at stake in each of the cases. Given the facts alleged and the amount of punitive damages awarded in comparable cases, it is clear that the answer to this question is yes.

At least **$50,000** in punitive damages is at stake in each of the ECF No. 3768 cases.

### 3. Attorneys' Fees

When state law "authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy." *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998). Until recently, it was an "open question [in this circuit] whether attorney's fees that [were] anticipated but unaccrued at the time of removal or filing in federal court ... [could] be included in the amount-in-controversy." *Gonzales v. CarMax Auto Superstores, LLC*, 840 F.3d 644, 649 n.2 (9th Cir. 2016). That question was resolved, and answered affirmatively, last year:

> As explained in *Chavez* [*v. JPMorgan Chase & Co.*, 888 F.3d 413 (9th Cir. 2018) ], when we assess the amount in controversy at the time of removal, we must include all relief to which a plaintiff is entitled if the action succeeds. 888 F.3d at 418. Accordingly, if the law entitles the plaintiff to future attorneys' fees if the action succeeds, "then there is no question that future [attorneys' fees] are 'at stake' in the litigation," *id.* at 417, and the defendant may attempt to prove that future attorneys' fees should be included in the amount in controversy.

*Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 794 (9th Cir. 2018) (second alteration in original).

If Plaintiffs prevail on their express or implied warranty claims, they may obtain attorneys' fees. *See* Ala. Code § 8-20-8 ("If it is determined ... that either the manufacturer or new motor vehicle dealer, or both, have violated an express or implied warranty, the court shall add to any award or relief granted an additional award for reasonable attorney's fees."). Attorneys' fees are therefore " 'at stake' in the litigation." *Fritsch*, 899 F.3d at 794 (quoting *Chavez*, 888 F.3d at 417).

To determine the amount of attorneys' fees at stake, the removing party can provide an "estimate[ ] [of] the amount of time that the case will require," and an estimate of "plaintiff's counsel's hourly billing rate." *Surber*, 110 F. Supp. 2d at 1232. VWGoA has offered the following evidence of this type here.

To estimate Plaintiffs' counsel's hourly billing rate, VWGoA has identified motions that other plaintiffs' counsel have filed in this MDL and that list those counsel's hourly rates. To be conservative, VWGoA has used the low end of these rates, which is $295 per hour, as an estimate of Plaintiffs' counsel's hourly rate. (*See* MDL Dkt. No. 4232 at 57.)

To estimate the number of hours that Plaintiffs' counsel will spend litigating the ECF No. 3768 cases, VWGoA reviewed 34 "Lemon Law" cases that resulted in awards of attorneys' fees and expenses. Some of those cases settled; others went to trial. (*See* MDL Dkt. No. 4232-5, App. D (listing cases).) The number of hours that plaintiffs' counsel spent litigating these cases was often not disclosed, but VWGoA performed the following calculations to reach an average number of 201.6 hours per case:

> *8 First, [VWGoA] separated attorneys' fees from attorneys' expenses in the 34 listed Lemon Law cases. Out of the total award of attorneys' fees and expenses, on average, 87.1% of the award was attributable to attorneys' fees and 12.9% was attributable to expenses. Therefore, to estimate the average amount of attorneys' fees in these cases (not including attorneys' expenses), [VWGoA] took 87.1% of $92,583.63 [with $92,583.63 reflecting the average total award of attorneys' fees and expenses]: [the result was] $80,640.34.
>
> Second, [VWGoA] used this estimate of the attorneys' fee awards to determine the average number of attorney hours for which fees were awarded in these 34 cases (given that the number of hours were not disclosed or readily available for many cases). [VWGoA] divided $80,640.34 by an inflated billing rate of $400/hour. The result is an estimate of the number of hours for which attorneys were awarded fees, on average, in these cases: 201.6 hours.

(Opp'n, MDL Dkt. No. 4232 at 58 (footnote omitted).)

Multiplying the estimated hourly rate of $295 by 201.6 hours, VWGoA has estimated that $59,472 in attorneys' fees are in controversy in each of the ECF No. 3768 cases.

Plaintiffs have not challenged the accuracy of VWGoA's estimates, and the methodology used strikes the Court as generally reasonable. The estimated hourly rate is supported by evidence, and the lemon-law cases that VWGoA has identified serve as reasonable comparisons to this case, as Plaintiffs' warranty claims are effectively lemon-law claims. *See* 88 A.L.R.5th 301 (2001) (explaining that "lemon laws" were designed "to give consumers a means of enforcing a manufacturer's express warranty on a motor vehicle"). Although Plaintiffs also bring fraud claims here, the need to prove fraud in addition to a lemon-law violation, if anything, may increase the number of hours counsel spends litigating.

The Court's only concern with VWGoA's estimates is that they do not take into account that Plaintiffs' counsel is litigating several cases against VWGoA that are based on the same core allegations, and it is likely that certain efficiencies will be realized. For example, any evidence that counsel gathers to support that VWGoA used emissions-cheating software will likely be used in all of the ECF No. 3768 cases.

To be sure, even with such efficiencies, Plaintiffs' counsel could easily spend at least 201.6 hours litigating each case. At a minimum, each Plaintiff will likely need to be deposed. And if the cases proceed to trial, separate trials may be required (if the cases remain unconsolidated) and there may be Plaintiff-specific damages issues.

To be conservative and to reflect possible economies of scale, however, the Court will only include 100.8 hours in the estimate for each of the ECF No. 3768 cases, which is half of the hours that VWGoA has estimated. The reduced number reflects that there are likely to be efficiencies in litigating several similar cases, but that these efficiencies will not reduce the time spent litigating each case to zero.

Multiplying 100.8 hours by the hourly rate of $295 leads to an estimate of **$29,736** in attorneys' fees per case. At least that amount of attorneys' fees is reasonably in controversy in each of the ECF No. 3768 cases.[3]

4. Total Amount in Controversy

*9 When $50,000 in punitive damages is added to $29,736 in attorneys' fees, the combined amount exceeds $75,000. And when actual damages are also added, the amounts in controversy for the ECF No. 3768 cases range from **$97,727** to **$113,770**. Section 1332(a)'s amount-in-controversy requirement is satisfied.

### IV. CONCLUSION

VWGoA has plausibly alleged that there is complete diversity of citizenship between it and Plaintiffs, and a preponderance of the evidence supports that the amount-in-controversy requirement is met. The Court therefore concludes that it has diversity subject-matter jurisdiction over the ECF No. 3768 cases and DENIES the motion to remand.

**IT IS SO ORDERED.**

### APPENDIX

**(List of remaining ECF No. 3768 cases)**

1. *Benson v. VWGoA*, No. 3:16-cv-3056-CRB

2. *Bradley v. VWGoA*, No. 3:16-cv-6650-CRB

3. *Harris v. VWGoA*, No. 3:16-cv-6512-CRB

4. *Hendrick v. VWGoA*, No. 3:16-cv-3703-CRB

5. *McLeod v. VWGoA*, No. 3:16-cv-6169-CRB

6. *Morrison v. VWGoA*, No. 3:16-cv-6651-CRB

7. *Quinley v. VWGoA*, No. 3:16-cv-6168-CRB

8. *Summers v. VWGoA*, No. 3:16-cv-3057-CRB

9. *Swanson v. VWGoA*, No. 3:16-cv-4363-CRB

**All Citations**

Slip Copy, 2019 WL 693234

---

Footnotes

1   The nine remaining cases are listed in the Appendix at the end of this Order.
2   The Magnuson–Moss Warranty Act has its own, lower amount-in-controversy requirement. *See* 15 U.S.C. § 2310(d) (providing that federal courts have subject-matter jurisdiction over Magnuson-Moss claims if "the amount in controversy is [not] less than the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be

    determined in this suit"). Because VWGoA asserts that the diversity statute's $75,000 controversy requirement is met, the Court focuses its attention there.

3    VWGoA has also provided an estimate of costs for each of the ECF No. 3768 cases, but costs cannot be included in amount-in-controversy calculations. *See* 28 U.S.C. § 1332(a) (requiring that the amount in controversy "exceed[ ] the sum or value of $75,000, *exclusive of interests and costs*") (emphasis added).

---

**End of Document**      © 2019 Thomson Reuters. No claim to original U.S. Government Works.